Sarah M. CIPRIANO and Jeune M. Miller, Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NORTH TONAWANDA, NEW YORK; and North Tonawanda United Teachers, Defendants.

No. CIV–84–80C.

United States District Court, W.D. New York.

Dec. 7, 1988.

As Amended Dec. 16, 1988.

menting a more comprehensive solution to the overcrowding crisis.

David Gerald Jay, Buffalo, N.Y., for plaintiffs.

Edward C. Cosgrove, Buffalo, N.Y., for defendant Bd. of Educ.

Ira Paul Rubtchinsky, Albany, N.Y., for defendant North Tonawanda United Teachers.

Christopher C. Mackaronis, Washington, D.C., for amicus curiae American Ass'n of Retired Persons.

Charles A. Shanor, Washington, D.C., for amicus curiae E.E.O.C.

CURTIN, Chief Judge.

This case is before the court on remand from the Second Circuit, *Cipriano v. Board of Education of the City School District of the City of North Tonawanda, New York*, 785 F.2d 51 (2d Cir.1986), reversing this court's order dated April 2, 1985 (Item 17), which granted summary judgment in favor of defendants in an action under the Age Discrimination in Employment Act [ADEA], 29 U.S.C. §§ 621–634. Plaintiffs now move for summary

judgment on their claims (Item 46; *see also* Item 57), and defendants cross-move for summary judgment on their affirmative defenses (Items 51, 53).[1] The Equal Employment Opportunity Commission [EEOC] and the American Association of Retired Persons [AARP] have filed briefs, and have appeared before the court, as *amicus curiae* (Items 35, 36, 40, 52, 55).

The principal question for the court on remand is whether defendants have made a showing, sufficient to withstand plaintiffs' summary judgment motion, that the age-based exclusion of plaintiffs from defendants' voluntary early retirement incentive plan was based on legitimate business reasons and therefore was not a subterfuge to evade the purposes of the ADEA. 785 F.2d at 58; *see* 29 U.S.C. § 623(f)(2).

*Factual and Procedural History*

In order to decide the motions now before it, it will be necessary for the court to set forth the undisputed facts and procedural history of the case in some detail. Plaintiff Sarah M. Cipriano was employed as a teacher in the North Tonawanda City School System by defendant Board of Education of the City School District of the City of North Tonawanda (the Board) from September, 1945, until her retirement at age 65 in June, 1981, a total of 36 years. Jeune M. Miller was employed as a teacher in the same school system from 1939 through 1943 and from 1961 until her retirement at age 65 in June, 1981, a total of 24 years. Both plaintiffs were subject to the terms of a collective bargaining agreement negotiated between the Board and the Union. That agreement, effective July 1, 1980 through June 30, 1983, contained a provision offering voluntary retirement incentives to members of the bargaining unit "between the ages of 55 and 60 who retired effective between July 1 and February 1 in any of the three years of the agreement and had completed 20 years of service under the New York State Teachers Retirement System." 785 F.2d at 52. Such employees could elect either of two options. Under Option A, the Board agreed to reimburse retirees for health insurance premiums until the retiree reached age 65, and to pay a lump sum of $2,000 plus $50 for each additional year of service beyond 20 years. Under Option B, the Board would pay the retiree a lump sum of $10,000. Since both plaintiffs had passed their 61st birthday before July 1, 1980, they were ineligible for participation in this incentive plan.[2]

Plaintiffs commenced this action on January 24, 1984, against both the Board and the Union, alleging that the retirement incentive plan negotiated by those defendants discriminated against plaintiffs because of their age in violation of the ADEA. Item 1, ¶¶ 5, 8–11, 13. Each claimed as damages the $10,000 she would have received under Option B of the plan, if the incentive plan had applied to her at the time of her retirement, as well as punitive damages based on the defendants' allegedly willful violation of the ADEA, injunctive relief nullifying the retirement incentive plan, attorney's fees, costs, and other appropriate relief. Item 1.[3]

---

1. During oral argument before the court on July 15, 1988, counsel for the Board asked the court to consider its brief in opposition to plaintiff's motion as a cross-motion for summary judgment. *See* Item 61, pp. 98–103.

2. On May 23, 1981, shortly before their retirement, plaintiffs filed complaints with the EEOC alleging that the incentive plan constituted age discrimination in violation of the ADEA. The EEOC is alleged to have sent a letter of violation to defendants on April 27, 1982, and, since that date, to have attempted to conciliate plaintiffs' claim without commencing formal action on plaintiffs' behalf. Item 1, ¶¶ 11–15; *see also* 785 F.2d at 52.

3. The complaint originally named the North Tonawanda Teachers Association [NTTA] as a defendant, but was amended to substitute the Union. Item 10. On March 1, 1984, the NTTA filed a motion to dismiss the complaint on various grounds. Item 5. As noted by the Court of Appeals, 785 F.2d at 52, this motion was treated by this court as having been filed on behalf of the Union and the Board, and was eventually converted to a motion for summary judgment. The Board filed its answer to plaintiffs' complaint on March 5, 1984, raising ten affirmative defenses. Item 7. On April 25, 1986, subsequent to remand, the Union filed its answer (Item 23), and has moved to amend its answer to include additional affirmative defenses. Item 33.

In its order granting summary judgment for defendants, this court found that the retirement incentive plan was consistent with the objectives of the ADEA, was a bona fide employment benefit plan under § 4(f)(2) of that act,[4] and was not adopted as a subterfuge to evade the purposes of the ADEA. Item 17, pp. 2–3. On appeal, the Second Circuit found that defendants had, as movants for summary judgment, satisfactorily sustained the burden of showing that the incentive plan was a bona fide retirement plan for the purposes of § 4(f)(2), 785 F.2d at 54, but reversed and remanded because "defendants did not bear their burden of showing that the incentive plan was 'not a subterfuge to evade the purposes of' the ADEA sufficiently to justify dismissal of the complaint without a trial." *Id.* at 57. The court made it clear that it was neither endorsing nor condemning the particular incentive plan at issue, or voluntary retirement plans in general. *Id.* at 59.

Subsequent to the remand, the parties engaged in discovery consisting primarily of the depositions of plaintiffs (Item 28), the depositions of Harry H. Beno (Superintendent of Schools, North Tonawanda City School District) and Calvin H. Cornwell (Teacher (retired), North Tonawanda City School District) (Item 39), and the deposition of James Rooney (Chief Labor Negotiator, Board of Education of the City School District of the City of North Tonawanda).[5] Defendants have also filed answers to plaintiffs' interrogatories (Items 29, 31). It is primarily on the basis of information adduced as a result of this limited discovery that plaintiffs make their present motion for summary judgment.

*Summary of the Arguments*

In support of their motion, plaintiffs contend that the depositions and interrogatories in the record provide uncontroverted evidence leading to but one conclusion— that defendants' motives for adopting the incentive plan were admittedly discriminatory and, when coupled with a *per se* violation of the ADEA as already found by the Second Circuit, require the entry of summary judgment in plaintiffs' favor. Item 46, pp. 15–18. According to plaintiffs, the Beno and Rooney depositions clearly demonstrate that the Board's exclusive motive in implementing the early retirement incentive was to save money by replacing older, higher paid teachers with younger, entry level employees. Plaintiffs contend that the Union's economic motive for adopting the plan—*i.e.*, to preserve the jobs of younger teachers by offering older teachers financial encouragement to retire early —was discriminatory as well, as evidenced by the Rooney and Cornwell depositions. Plaintiffs also contend that there is no rational business justification for excluding teachers over age 60 from the plan (*id.*, pp. 18–23), and that defendants cannot, nor will they be able to at trial, demonstrate any correlation between age and the cost of the challenged plan so as to "shelter in the safe harbor of section 4(f)(2)." *Karlen v. City Colleges of Chicago*, 837 F.2d 314, 319 (7th Cir.), *cert. denied sub nom. Cook Co. College Local 1600 v. City Colleges of Chicago*, —— U.S. ——, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988); *see* Item 46, pp. 24–29. Additionally, plaintiffs contend that the defendants' violation of the ADEA was "willful," thereby entitling plaintiffs to punitive and liquidated damages and costs. Item 46, pp. 12–13.

In opposition, the Board argues that granting plaintiffs' summary judgment motion would deny it the opportunity afforded by the Second Circuit to factually establish

---

**4.** § 4(f)(2), 29 U.S.C. § 623(f)(2), provides in relevant part:

> It shall not be unlawful for an employer ... (2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual[.]

**5.** The deposition of Mr. Rooney has not been filed with the court, but relevant excerpts of that deposition have been provided by the parties in their briefs.

its affirmative defense under § 4(f)(2). According to the Board, the significant cost considerations that factored into the decision to adopt the early retirement incentive plan clearly represent the type of "legitimate business reasons" required by the ADEA. Item 51, pp. 2–6. The Board further contends that since the plan at issue here provided retirement incentive only to those employees between the ages of 55–60, and no incentive (as opposed to a lesser incentive) was offered to those over the age of 60, the plan did not run afoul of the major purpose of the ADEA, which is to discourage the removal of older persons from the workforce. *Id.,* pp. 7–8. Finally, the Board contends that plaintiffs' deposition references are insufficient to establish discriminatory motive, and that the question of "willfullness" is properly one for the jury. *Id.,* pp. 6–7.

The Union's argument is somewhat more complicated, at least in a procedural sense. First, the Union renews its motion under Fed.R.Civ.P. 15, filed July 6, 1987 (Item 33), to amend its answer to include affirmative defenses based on the applicable statute of limitations and principles of waiver and estoppel. *See* Item 61, pp. 4–5. With regard to those defenses, the Union contends that the action against it was not timely filed, since plaintiffs knew or should have known of the alleged discriminatory act more than two years before the commencement of the action (Item 53, pp. 18–29); that the complaint should be dismissed since plaintiffs failed to comply with the procedural requirements of the ADEA (*Id.,* pp. 30–31); and that plaintiffs should be estopped from claiming a violation of their rights under the ADEA since they never formally applied for the retirement incentive. *Id.,* pp. 32–33. Second, the Union contends that plaintiffs may not recover money damages against it, since such relief is available only against employers. *Id.,* pp. 15–17. Third, the Union claims that there is a question, yet unresolved by the Supreme Court, as to whether the conduct complained of—*i.e.,* participation in lawful collective bargaining activity—is within the purview of the ADEA. *Id.,* pp. 34–35. Finally, the Union contends that there is sufficient evidence in the record to support its affirmative defense under § 4(f)(2) that it had a legitimate business-based reason for agreeing to the plan. *Id.,* pp. 36–38.

As *amicus,* the EEOC takes the position that plaintiffs are entitled to summary judgment on their ADEA claims since, solely because of their age, they were never given the opportunity to participate in the early retirement plan. Item 55, pp. 3–6. The EEOC also contends that the defendants' violation of the ADEA was "willful" since they acted in reckless disregard of that Act's provisions by failing to take affirmative steps to resolve concerns about the incentive plan's discriminatory effect. *Id.,* pp. 6–7. Finally, adopting a somewhat "solomonic" position, the EEOC urges that the defendants are entitled to a judgment declaring that the incentive plan, as it presently stands, is lawful since it is justified by legitimate age-related cost considerations and, as long as the plan provides a "window" period to allow all employees (including those over 60) to participate, should not be found to be a subterfuge to evade the purposes of the ADEA. *Id.,* pp. 8–12.[6] According to the EEOC, since plaintiffs were never offered that "window" period, summary judgment should be entered on their ADEA claims.

The position of *amicus* AARP adds a further twist to the arguments presented here.[7] According to AARP, the Second Circuit's finding in *Cipriano* that the challenged retirement incentive was a bona fide

---

**6.** At oral argument on July 15, 1988, counsel for the EEOC presented to the court an advance notice of proposed rulemaking, dated July 7, 1988, as evidence of the EEOC's efforts to deal with the question of the legality of early retirement plans under the ADEA. Such eventual rulemaking will presumably embody the position advanced by the EEOC before this court.

**7.** AARP's brief (Item 40), as well as the initial brief of the EEOC (Item 36) was submitted prior to the filing of plaintiffs' motion for summary judgment, but the views presented therein are illuminating and fully consistent with the court's task at this procedural juncture.

At oral argument, counsel for AARP appeared on behalf of plaintiffs as well as in his *amicus* capacity.

employee benefit plan for the purposes of § 4(f)(2), 785 F.2d at 54, must be re-examined by this court in light of the subsequent Supreme Court decision in *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), which held that a "one-time lump sum payment triggered by a single event," *id.* 107 S.Ct. at 2218, is not an "employee benefit plan." Item 40, pp. 9–13. AARP also contends that, even if the plan is of the type protected by § 4(f)(2), under the "equal benefit or equal cost" standard embodied in consistent administrative interpretations of that section, the plan is a subterfuge to evade the purposes of the ADEA. *Id.* at pp. 13–23; 35–37. AARP further contends that the EEOC's "new" position on voluntary early retirement incentive plans, set forth at pp. 26–29 of its original *amicus curiae* brief (Item 36) and elaborated upon at oral argument, is contrary to the Commission's own regulations and thus not entitled to any deference. Item 40, pp. 23–35.

## Discussion

■ Section 4(a)(1) of the ADEA makes it unlawful for an employer

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1). The ADEA has three stated purposes: (1) to promote employment of older persons based on their ability rather than their age; (2) to prohibit arbitrary age discrimination in employment; and (3) to help employers and workers find ways of meeting problems arising from the impact of age on employment. 29 U.S.C. § 621(b).

In its remand order, the Second Circuit made it clear that unless the defendants can meet their burden of establishing the statutory affirmative defense of § 4(f)(2) (*see* note 4, *infra*), the voluntary early retirement incentive plan at issue here "would run afoul of § 4(a)(1)". 785 F.2d at 53.

The 4(f)(2) defense has three elements: (1) there must be a bona fide (retirement) plan, (2) the action must have been taken in observance of its terms, and (3) the retirement plan must not have been a subterfuge to evade the purposes of the ADEA.

*EEOC v. Home Insurance Co.,* 672 F.2d 252, 257 (2d Cir.1982). With regard to the first element, the Second Circuit found that the challenged plan, on its face,

> is a "bona fide employee benefit plan" in the sense that employees benefited and substantial benefits were paid to employees who were covered by it.... [W]e see no reason to doubt that the incentive plan, when read as a supplement to an underlying general retirement plan, was a "retirement" plan for the purposes of § 4(f)(2).

785 F.2d at 54. Plaintiffs, through *amicus* AARP, now argue that this holding must be reexamined in light of the intervening Supreme Court decision in *Fort Halifax.* According to plaintiffs, the holding in *Fort Halifax* is clear that a one-time lump-sum cash payment (such as the incentive at issue here) triggered by a single event (such as the plaintiffs' retirement) does not constitute an "employee benefit plan" within the meaning of § 4(f)(2), and thus defendants should not be allowed to avail themselves of the § 4(f)(2) defense. Plaintiffs also cite *EEOC v. Borden's Inc.,* 724 F.2d 1390 (9th Cir.1984); *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); and *Alford v. City of Lubbock,* 664 F.2d 1263 (5th Cir.), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982), as support for their argument.

*Fort Halifax* involved an employer's challenge under the Employee Retirement Income Security Act [ERISA] to a Maine state statute requiring employers to provide a one-time severance payment to employees in the event of a plant closing. In finding that the state law was not preempted by ERISA, and that the employer was thus liable for severance pay due to the closing of one of its plants, the Court held that the one-time severance payments triggered by a single event did not constitute

an employee benefit plan so as to invoke the protections of ERISA. Noting the basic difference between a "benefit" and a "plan," the Court examined the Congressional intent behind ERISA's preemption provision and found that the major concern in affording employers "the advantages of a uniform set of administrative procedures governed by a single set of regulations ... only arises ... with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation." 107 S.Ct. at 2217.

> The requirement of a one-time lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation.... To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

*Id.* at 2218. In the instant case, however, defendant's retirement incentive involves more than simply a "one-time lump-sum payment triggered by a single event". With the exception of the two plaintiffs, the incentive is offered to all employees who pass through the 55–60 age bracket, and thus is a continuing (rather than one-time) benefit triggered by each employee's voluntary election of the plan (rather than by a single event affecting all employees simultaneously).[8] Moreover, defendants' plan provides the early retiree with a choice of either (A) continued medical benefits until age 65 combined with a $2,000 lump-sum payment, plus $50 for each year of service over 20 years, or (B) a $10,000 lump-sum payment. Therefore, unlike the employer in *Fort Halifax* which, upon the closing of one of its plants, was faced with the statutory duty to "write a check" covering all displaced employees, the employer

in the instant case is under a continuing obligation which places "periodic demands on its assets that create a need for financial coordination and control." *Id.*

With regard to the other cases cited by plaintiffs, the court agrees with the thorough analysis undertaken by the Second Circuit in its remand order which found that each of the "plans" at issue in the *Borden's, Westinghouse* and *Alford* cases involved fringe benefits that were somehow tied by the employer to the underlying retirement plans, and "could in no way be considered to be functionally related to those plans". 785 F.2d at 55. The incentive plan at issue here, however, increases the compensation available to the employee under the underlying retirement plan in return for leaving the workforce at an earlier age. Since the incentive "is a quid pro quo for leaving the workforce after a certain age and number of years of service, it must be viewed functionally as part of" the underlying retirement plan. *Id.* at 56.

Accordingly, upon reconsideration of the requirements of § 4(f)(2) in light of the *Fort Halifax* decision (and the other authorities cited by plaintiffs), the court finds that the early retirement incentive plan at issue here is a bona fide plan for the purposes of establishing a § 4(f)(2) defense, and that the action complained of—*i.e.,* offering the incentive to younger workers but not to plaintiffs—was taken in observance of the terms of that plan. The focus of the court's inquiry on the pending motions and cross-motions for summary judgment now becomes whether defendants have established element (3) of the *Home Insurance* test, namely that the retirement plan must not have been a subterfuge to evade the purposes of the act.

Defendants' task of disproving subterfuge is a difficult one considering the relative lack of guidance from the courts, Congress, or the EEOC[9] with regard to the

---

8. *See* Exh. F, pp. 56–57, and Exh. V, pp. 60–61, attached to Item 46. As those exhibits reveal, defendants' plan has remained in effect, virtually unchanged, since its adoption in 1980.

9. Effective July 1, 1979, Congress transferred enforcement authority over the ADEA from the Department of Labor [DOL] to the EEOC. *See* Reorg. Plan No. 1 of 1978, 3 C.F.R. § 312 (1978), *reprinted in* 92 Stat. 3781 (1978). The relevant DOL regulations, originally promulgated at 29

type of plan challenged by plaintiffs here. Some courts have held that, in general, an employer's adoption of a voluntary early retirement plan does not in itself create a *prima facie* case of age discrimination, *see Bodnar v. Synpol, Inc.*, 843 F.2d 190, 192 (5th Cir.1988), and that such plans are indeed beneficial to the employee. *Henn v. National Geographic Society*, 819 F.2d 824, 826 (7th Cir.1987).[10] In making a determination as to whether the plaintiff has established a *prima facie* case, the courts are guided by the principles embodied in the relevant EEOC regulations which, as they currently stand, provide that

> [n]either section 4(f)(2) nor any other provision of the [ADEA] makes it unlawful for a plan to permit individuals to elect early retirement at a specified age at their own option. Nor is it unlawful for a plan to require early retirement for reasons other than age.

29 C.F.R. § 1625.9(d) (1988). It is undisputed in the instant case, and the Second Circuit so found, that the incentive plan adopted by defendants excluded plaintiffs because of their age, and thus plaintiffs have established a *prima facie* case requiring defendants to satisfy § 4(f)(2).

The purpose of § 4(f)(2) "is to permit age-based reductions in employee benefit plans where such reductions are justified by significant cost considerations." 29 C.F.R. § 1625.10(a)(1). Those regulations further provide:

> (a)(1) ... Where employee benefit plans do meet the criteria in section 4(f)(2), benefit levels for older workers may be reduced to the extent necessary to achieve approximate equivalency in cost for older and younger workers. A benefit plan will be considered in compliance with the statute where the actual amount of payment made, or cost incurred, in behalf of an older worker is equal to that made or incurred in behalf of a younger worker, even though the older worker may thereby receive a lesser amount of benefits or insurance coverage....
>
> ....
>
> (d) *"Subterfuge."* ... In general, a plan or plan provision which prescribes lower benefits for older employees on account of age is not a "subterfuge" within the meaning of section 4(f)(2), provided that the lower level of benefits is justified by age-related cost considerations....
>
> (1) *Cost data-general.* Cost data used in justification of a benefit plan which provides lower benefits to older employees on account of age must be valid and reasonable. This standard is met where an employer has cost data which show the actual cost to it of providing the particular benefit (or benefits) in question over a representative period of years....

29 C.F.R. § 1625.10(a)(1), (d), (d)(1) (1987). The regulations further state that any cost comparisons and adjustments made under § 4(f)(2) must be done on a "benefit-by-benefit" basis, which calls for adjustments to be made "in the amount or level of a specific form of benefit for a specific event or contingency", 29 C.F.R. § 1625.10(d)(2)(i), or on a "benefit package" basis, which

C.F.R. § 860.120 (1970), were continued in effect unchanged by the EEOC in 1979, 44 Fed. Reg. 37974 (June 29, 1979), and were recently recodified at 29 C.F.R. § 1625.10, 52 Fed.Reg. 23811 (June 25, 1987). *See* Item 36, p. 23 n. 17; Item 40, p. 20 n. 17.

**10.** The discussion in *Henn* centers around the Second Circuit's opinion in *Paolillo v. Dresser Indus., Inc.*, 813 F.2d 583 (2d Cir.1987), *withdrawn and substituted on rehearing*, 821 F.2d 81 (2d Cir.1987). In its original opinion in the *Paolillo* case, the Second Circuit found that an employer's offering an incentive retirement plan constituted a *prima facie* violation of the ADEA, and much of Judge Easterbrook's opinion in *Henn* was devoted to an explanation of why *Paolillo* was wrong. The Second Circuit panel, however, subsequently withdrew its original *Paolillo* opinion and issued a new opinion, written by Chief Judge Feinberg, which held only that the particular plan before it, as implemented, raised a factual question as to whether the retiring employees had acted voluntarily in accepting the terms of the plan. 821 F.2d at 84. Were it not for the shortness of time given to plaintiffs within which to make their decisions whether to accept early retirement benefits (two of the plaintiffs were given three days, and one of the plaintiffs was given one day), the plan at issue in *Paolillo* would most likely have been approved.

allows for aggregate cost comparisons to be made only if "not used to reduce the cost to the employer or the favorability to the employees of overall employee benefits for older employees." 29 C.F.R. § 1625.10(d)(2)(ii). Finally, § 1625.10(d)(3) provides that:

> Cost comparisons and adjustments under section 4(f)(2) may be made on the basis of age brackets of up to 5 years. Thus a particular benefit may be reduced for employees of any age within the protected age group by an amount no greater than that which could be justified by the additional cost to provide them with the same level of the benefit as younger employees within a specified five-year age group immediately preceding theirs.

29 C.F.R. § 1625(d)(3).

Noting the "continued vitality" of these regulations, 785 F.2d at 58, and the "fairly heavy burden" these regulations impose on the employer, *id.,* the Second Circuit, in remanding, has provided this court some limited further guidance with regard to the concept of "subterfuge" when that term is applied to voluntary, as opposed to involuntary, participation in an early retirement incentive plan.

> While we would not wish to be understood as endorsing every detail of the regulations, we cannot simply disregard them. All that we now decide is that even in the case of voluntary early retirement plans the employer—and also here the union—must come up with some evidence that the plan is not a subterfuge to evade the purposes of the ADEA by showing a legitimate business reason for structuring the plan as it did.

> . . . .

... The evidence of business reasons required to show that a voluntary early retirement plan is not a subterfuge would almost necessarily be less than what was required to make such a showing in the case of a mandatory plan. *Id.* at 58–59. Following the Second Circuit's directive, *id.* at 59, this court granted the application of the EEOC to participate in the case as *amicus curiae* so as to determine the current status of the interpretive regulations and guidelines with respect to the permissible means of structuring voluntary retirement plans. Item 37.

As outlined in its submissions to the court, the EEOC views the regulations, as well as the legislative history underlying the enactment and amendment of the ADEA, as generally allowing employers to provide lower benefits to older workers only where the cost of providing the benefit increases with age. Item 36, p. 25; *see* 29 C.F.R. § 1625.10(a)(1), (d)(1)–(3); *see also Karlen,* 837 F.2d at 319 (where employer uses age as basis for varying retirement benefits, he must prove a close correlation between age and cost to benefit from § 4(f)(2)); *Borden's,* 724 F.2d at 1396 (§ 4(f)(2) enacted to encourage the hiring of older workers by relieving employers of the duty to provide them with equal benefits—where equal benefits would be more costly for older workers). This principle is commonly referred to as the "equal benefit or equal cost" rule.[11] *See* Item 40, pp. 14, 18. The EEOC now argues that this principle should not be automatically applied as the exclusive test for proving the absence of subterfuge in early retirement plans, and especially should not be applied to such plans as the one at issue here where the incentive, and the choice, to retire early is

---

11. The DOL regulations promulgated shortly after the ADEA was enacted articulated the "equal benefit or equal cost" principle as follows:

> Thus, an employer is not required to provide older workers who are otherwise protected by the law with the same pension, retirement or insurance benefits as he provides to younger workers, so long as any differential between them is in accordance with the terms of a bona fide benefit plan. For example, an employer may provide lesser amounts of insurance coverage under a group insurance plan to older workers than he does to younger workers, where the plan is not a subterfuge to evade the purposes of the Act. A retirement, pension, or insurance plan will be considered in compliance with the statute where the actual amount of payment made, or cost incurred, in behalf of an older worker is equal to that made or incurred in behalf of a younger worker, even though the older worker may thereby receive a lesser amount of pension or retirement benefits, or insurance coverage.

29 C.F.R. § 860.120(a) (1970); *compare with* 29 C.F.R. § 1625.10(a)(1) (1987).

"truly voluntary". Item 36, p. 28–34. According to the EEOC, the employer's burden to demonstrate a legitimate business reason for enacting a voluntary early retirement incentive plan

> will be most effectively met where the specific age limitations are based on and reasonably supported by some objectively measured assessment of increasing cost and/or declining benefit to the employer in providing retirement incentives. For example, a cost/benefit analysis might consider such factors as the anticipated working life of employees relative to "normal" or expected retirement age, and cost of the retirement inducement versus payroll savings to be potentially realized by the employer.

*Id.* at 33 (footnote omitted). Thus, pending formal rulemaking (*see* note 6 *infra*), the EEOC has provided the court with valuable guidance as to the showing required by a defendant attempting to legitimate a voluntary early retirement incentive plan under § 4(f)(2). It must be reiterated here that the EEOC urges the court to approve the defendants' plan as it currently applies to the teachers affected, not as it applied to plaintiffs when enacted or when plaintiffs retired.

■ As plaintiffs and *amicus* AARP point out, the analysis adopted by the EEOC is at odds with several cases which have specifically rejected the type of age-based assumptions about economic savings and anticipated work life urged as relevant considerations under § 4(f)(2) by defendants and the EEOC here. In *Geller v. Markham*, 635 F.2d 1027 (2d Cir.1980), *cert. denied*, 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981), the Second Circuit held that a discriminatory hiring policy which excluded teachers with more than five years of experience could not be justified by economic considerations. 635 F.2d at 1034; *see also Marshall v. Arlene Knitwear, Inc.*, 454 F.Supp. 715, 728 (E.D.N.Y. 1978) (Where economic savings and expectation of longer future service are directly related to employee's age, it is a violation of ADEA to discharge the employee for those reasons). In so holding, the Court

specifically approved the then-current EEOC regulation establishing that

> a general assertion that the average cost of employing older workers as a group is higher than the average cost of employing younger workers as a group will not be recognized as a differentiation under the terms and provisions of the [ADEA], unless one of the other statutory exceptions applies.

29 C.F.R. § 860.103(h) (1979). That section was amended in 1981 to provide that:

> A differentiation based on the average cost of employing older employees as a group is unlawful except with respect to employee benefit plans which qualify for the section 4(f)(2) exception to the [ADEA].

29 C.F.R. § 1625.7(f) (1988). AARP would have the court read this current regulation, and the cases cited above, to stand for the proposition that a retirement plan cannot be justified on the basis of cost savings to the employer unless that plan *otherwise* qualifies under § 4(f)(2). In light of the guidance provided by the EEOC, however, as well as distinguishing factors evident in the *Geller* and *Arlene Knitwear* cases, the court refuses to adopt such a restrictive reading. Neither *Geller* nor *Arlene Knitwear* involved voluntary retirement incentive plans, nor did they involve the § 4(f)(2) defense. Therefore, for the purposes of deciding the motions now before it, the court will consider evidence of economic savings as relevant to the defendants' attempt to show legitimate business reasons for structuring the challenged plan as they did.

From the Board's perspective, the reason the age 55–60 limitation was adopted "was a desire to have a real 'incentive', as opposed to a bonus. The incentive was intended to encourage teachers within that age group to retire sooner than they might otherwise have done, allowing hiring and retention of younger personnel at cost savings." Item 29, p. 9 (Board's Answer to Plaintiffs' Interrogatory # 7); *see also* Item 46, p. 2 (Plaintiffs' Statement of Material Facts Not In Dispute, ¶ 7). The cost savings anticipated by the Board was the

difference between the salary of an older, more senior teacher (approximately $25,000 per year at the time the plan was adopted) and the salary of a less experienced teacher at the entry level (approximately $10,000). Item 46, pp. 2–3. In other words, while paying the $10,000 incentive to a 60 year-old teacher would cost the Board $10,000, it might have the immediate result of saving the Board $5,000 since it would reduce the payroll by $15,000 (the difference between a salary of $25,000 and a salary of $10,000), minus the cost of the incentive ($10,000). The savings would be even greater on a long-term basis as the cost of the incentive payment becomes factored into the payroll savings as time goes by. From the Union's perspective, the incentive plan was agreed to as a means of retaining jobs by avoiding the layoff of younger, less senior teachers. *Id.*, p. 3; Item 39 (Cornwell Deposition), pp. 125–26. There is little doubt that such reasons would be insufficient under § 4(f)(2) if the adoption of the plan resulted in the involuntary retirement or discriminatory hiring of any employee. However, no such claims are made in the instant case. The record is convincing that any retirement by an employee covered under the plan was, and would be, completely voluntary. The court views this as an important distinction which warrants application of the principles urged here by the EEOC. From an employer's standpoint, the very purpose of offering an early retirement incentive is to afford the employer the opportunity to effect potentially substantial payroll savings without inequitably altering its employment relationship with its workers. Thus, legitimate incentive plans may provide a less harmful method than layoffs for implementing workforce reductions and corporate layoffs while allowing the employer to save more per employee by eliminating higher paid senior positions or replacing the retired workers with lower-paid workers. *See* McMorrow, *Retirement and Worker Choice: Incentives to Retire and the Age Discrimination in Employment Act,* 29 B.C.L.Rev. 347, 366 (1988). At the same time, such incentives undeniably provide a desirable additional option for the employee who may wish to "retire,

receive the value of the package, and either take a new job (increasing his income) or enjoy new leisure. He may also elect to keep working and forfeit the package." *Henn,* 819 F.2d at 826. Furthermore, absent a maximum age limit (here, age 60), the incentive aspect of any such plan would be largely, if not entirely, negated since all employees would ostensibly become eligible for the plan's benefits upon reaching the triggering age. Thus, the "incentive" would be transformed into a "bonus," resulting in a new employment-related cost to the employer without any concomitant benefit. Under such circumstances, there would be neither an incentive for the employee to retire early, since that employee would eventually receive the enhanced benefit in any event, nor an incentive for the employer to offer the plan, since no payroll savings would result.

In light of these considerations, it appears to the court that granting plaintiffs' request for injunctive relief in the instant case, thereby declaring defendants' plan unlawful as it applies to all teachers in the North Tonawanda School System, would not benefit any of the parties to this lawsuit, and may result in the removal as a general matter of an important and valuable employment option for other employers and employees who may desire to implement or choose similar incentive plans. As mentioned above, the critical element in such a plan is "voluntariness." As the Second Circuit has stated, "accepting early retirement is a major decision with far-reaching impact on the lives of the workers and we emphasize that the decision must be voluntarily made." *Paolillo v. Dresser Industries, Inc.,* 821 F.2d 81, 84 (2d Cir. 1987). Thus, any such plan must be carefully tailored to give all workers a chance to make that decision without arbitrarily discriminating against any worker, or group of workers, solely because of age. With these important considerations in mind, the court now finds that an employer may lawfully offer an early retirement incentive plan under § 4(f)(2) of the ADEA provided that (1) all retirement eligible employees are afforded an opportunity to vol-

untarily participate in the plan, and (2) there is a legitimate business reason for structuring the plan with specific age limitations. Therefore, under this court's interpretation of the relevant regulations, and in light of the guidance provided by the EEOC as to the application of those regulations to voluntary early retirement incentive plans, the court also finds (with respect to the general validity of the challenged plan) that the justifications offered by defendants in the instant case for structuring the plan the way they did constitute legitimate business reasons under § 4(f)(2) of the ADEA.

Plaintiffs (and AARP) argue that such a finding would be at odds with the result reached by the Seventh Circuit in the *Karlen* case. In reversing the district court's entry of summary judgment in favor of defendants on a challenge to a voluntary early retirement plan which offered retirement incentives to persons between the ages of 55 and 69, but which substantially reduced the incentive for those who chose to retire at age 65 or later, the Seventh Circuit found that:

> Nothing in the [ADEA] forbids an employer to vary employee benefits according to cost to the employer; and if, because older workers cost more, the result of the employer's economizing efforts is disadvantageous to older workers, that is simply how the cookie crumbles.... But where, as in the present case, the employer uses age—not cost, or years of service, or salary—as the basis for varying retirement benefits, he had better be able to prove a close correlation between age and cost if he wants to shelter in the safe harbor of section 4(f)(2).

837 F.2d at 319 (*citing* 29 U.S.C. § 1625.10(a)(1), (d)(1)–(3)). According to plaintiffs, the Seventh Circuit has thereby adopted the "equal benefit or equal cost" rule as the exclusive means of determining subterfuge in an analysis of voluntary early retirement plans under § 4(f)(2). My reading of *Karlen*, however, indicates that case is, on the whole, supportive of the type of plan at issue here. As discussed above, defendants' plan is not keyed to age but to the cost of keeping older workers (age 60 and over) on the payroll, and the cost-savings figures provided by defendants sufficiently demonstrate the legitimacy of their "economizing efforts." The plan objected to in *Karlen* used age 65 as the cutoff point for offering greatly reduced benefits, and no figures were provided to show why the benefits varied with age rather than length of service, or "why the big drop at age 65". More simply stated, the plan in *Karlen* discriminated against those within the group eligible for early retirement but over age 65, while the plan in the instant case offers the same incentive to all employees (with the notable exception of plaintiffs) who reach the age of 55.[12] An employer making such an offer should not be required to demonstrate the same "close correlation between age and cost" demanded of the employer in *Karlen* in order to take advantage of the shelter provided by § 4(f)(2).

While *Karlen* may therefore be read to support the type of retirement incentive plan at issue here, there are several additional distinguishing factors which suggest that this court should not require the same result as that reached by the Seventh Circuit. That court based its holding, at least in part, on the finding that the defendants in that case adopted their retirement plan "[t]o withhold benefits from older persons in order to induce them to retire", 837 F.2d at 320, thus attempting "by indirection to reinstitute what was so long the age–65 mandatory retirement norm." *Id.* There is no persuasive evidence of "inducement," as opposed to "incentive," in the record before the court in the instant case to indicate that defendants intended their plan to operate as a substitute for involuntary retirement. Moreover, *Karlen* is factually distinguishable on the basis that the plain-

---

12. The court in *Karlen* distinguished the holding in *Henn*, 819 F.2d 824, on the basis that the plan at issue in *Henn* offered a severance bonus to all employees over age 55 if they elected to retire within two months after the offer was made. Similarly, the plan at issue here in effect offers an incentive to all employees (except plaintiffs) over the age of 55, but gives those employees five years (rather than two months) to accept the incentive and retire early.

tiffs in that case were offered, and declined, the early retirement benefits and then brought suit claiming that they were, in effect, being punished for their decision. In the instant case, the plaintiffs' challenge is based on the fact that they were never given the opportunity to participate in the plan since they were both over 60 years old at the time the plan was first offered. Finally, and not insignificantly, the *Karlen* court's apparent adoption of the "equal benefit or equal cost" approach was reached without the benefit of the views presented to this court by the EEOC and the AARP.

■ Accordingly, the court now finds that plaintiffs have not met their summary judgment burden with respect to the general invalidity of defendants' early retirement plan under the ADEA and its interpretive regulations. Aside from the question of the plan's application to plaintiffs, defendants have sufficiently discharged their burden of demonstrating that no genuine issue of material fact exists as to whether they had legitimate business reasons for structuring the incentive plan the way they did. Accordingly, plaintiffs' motion for summary judgment declaring defendants' plan unlawful as a general matter is denied, and defendants' cross-motion for summary judgment with respect to the general validity of its voluntary early retirement incentive plan is granted.

■ The crucial problem remains, however, that the individual plaintiffs were never given the opportunity to retire "under the plan" since they were both beyond the age–60 limitation at the time the cash incentive was first offered. *See* Item 52, pp. 5–6. Therefore, it cannot be said that the plan was "truly voluntary" with respect to plaintiffs. Further, it cannot be disputed that the defendants neither provided any incentive benefits nor incurred any costs for such benefits on behalf of

plaintiffs. Thus, the only basis for denying plaintiffs' participation in the incentive plan was the fact that plaintiffs were over age 60, and "would be retiring anyway." Item 39, p. 97. Since the critical element of "voluntariness" was not satisfied, and since the fact that plaintiffs would eventually retire at some point in their careers is not the type of legitimate business reason contemplated by the Second Circuit in its remand order, plaintiffs were thus arbitrarily discriminated against solely because of their age in violation of the ADEA, and none of the reasons given by defendants and discussed above, economic or otherwise, are sufficient to establish a § 4(f)(2) defense to that discrimination.[13] The court's review of the summary judgment record before it, therefore, indicates that defendants' retirement incentive plan was adopted as a subterfuge to evade the purposes of the ADEA with respect to plaintiffs Sarah M. Cipriano and Jeune M. Miller.

■ Moreover, the depositions, answers to interrogatories, and affidavits submitted indicate that defendants' discriminatory conduct toward plaintiffs was "willful" since defendants " 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.' " *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128, 105 S.Ct. 613, 625, 83 L.Ed.2d 523 (1985) (quoting *Airline Pilots Ass'n v. Trans World Airlines*, 713 F.2d 940, 956 (2d Cir.1983)). The undisputed facts show that, while concerns as to the discriminatory effect of the age–60 limitation were raised by the Union during the negotiations that resulted in the adoption of the challenged plan, attorneys for the Union and the Board did not conduct any investigation into the ADEA implications, or other potential legal ramifications, of the plan. *See* Plaintiffs' Statement of Material Facts (Item 46), ¶¶ 16–19. Further-

---

13. With regard to the Union's argument that the ADEA does not apply to the provisions of a lawfully negotiated collective bargaining agreement (*see* Item 53, pp. 34–35), the Supreme Court has held that employers and unions cannot bargain away employees' rights to be free from employment discrimination. *Alexander v.*

*Gardner–Denver Co.*, 415 U.S. 36, 51–52, 94 S.Ct. 1011, 1021–22, 39 L.Ed.2d 147 (1974). While *Alexander* was decided under Title VII, the holding of that case has been extended to actions under the ADEA as well. *See U.S.E.E.O.C. v. County of Calumet*, 686 F.2d 1249, 1256 (7th Cir.1982).

more, defendants' negotiators rejected a proposed "grandfather clause" which would have provided a one-year "window" period during which teachers who were already over age 60 could have voluntarily participated in the plan. *Id.; see also* Exh. I, p. 3, ¶ 3, attached to Item 46. Under these circumstances, any violation stemming from the defendants' adoption of the plan is clearly the result of a deliberate and willful, as opposed to merely unknowing or negligent, act on the part of defendants.

The Union argues that further factfinding is required before a determination of willfulness can be made. Item 53, p. 23. According to the Union, its chief negotiator expressed his concerns over the legality of the incentive plan, but was limited in the extent of his bargaining power not only by the "take it or leave it" approach presented by the Board but also by New York State law. *Id.*, pp. 23–24. The Union further argues that it conducted negotiations within the framework of age discrimination law as it existed at the time, since the prevailing legal opinion in 1980 was that the type of plan at issue was not a violation of the ADEA. *Id.*, pp. 24–28.

These arguments do not change the fact, sufficiently demonstrated by the record, that defendants (as represented by their collective bargaining agents) had knowledge of the plan's potential discriminatory effect on plaintiffs. The pressures faced by the Union's negotiator, statutory or otherwise, were not unlike those faced by all participants in the collective bargaining process, and the record does not indicate the existence of any special factors which might require a different result here. The Union knew that its actions might have ADEA ramifications, but adopted the plan anyway. It could have conducted a legal investigation long before negotiations ever began in an attempt to structure a plan which would have provided for proper treatment of the two plaintiffs. Furthermore, regardless of the overall validity of the plan in the context of existing ADEA law, the result is inescapable that the plan denied Ms. Cipriano and Ms. Miller the same retirement incentive that was offered to younger teachers solely because those individuals were over the age of 60. The plan thus discriminated against plaintiffs in violation of the ADEA and, as discussed above, no legitimate business reason has been demonstrated to bring the plan within the protection of § 4(f)(2).

The two cases cited by the Union in support of its "willfulness" argument do not require a different result. The "plan" upheld by the court in *Mason v. Lister*, 562 F.2d 343 (5th Cir.1977), was actually a statutory provision that allowed all federal employees with over 25 years of service, or over 50 years old and with over 20 years of service, to voluntarily retire during a "reduction in force" [RIF] period in return for an annuity.[14] The early retirement provision did not have a maximum cutoff age, and thus the court was not faced with the question of whether excluding certain employees because of their age is permissible under the ADEA. The other case, *Patterson v. Independent School District No. 709*, 742 F.2d 465 (8th Cir.1984), similarly offered an early retirement incentive to all employees, albeit on a sliding scale. The plan at issue in *Patterson* was provided by a Minnesota state statute which held out a "carrot" of $10,000 for early retirement at age 55, reduced by $500 for each year over age 55 until 60, and by $1,500 for each year over age 60. *Id.* at 467–68. In the instant case, no "carrot" at all was ever offered to plaintiffs for the sole reason that they were over the maximum cutoff age at the time the plan was adopted.

Plaintiffs have thus met their summary judgment burden establishing that defendants' conduct with respect to plaintiffs amounted to knowing or reckless disregard of the ADEA's prohibition against age-based employment discrimination, and plaintiffs are thus entitled to liquidated damages pursuant to 29 U.S.C. § 626(b).

---

**14.** The statute provided, in relevant part:
> An employee who is separated from the service ... voluntarily, during a period when the agency in which he is employed is undergoing a major reduction in force, ... after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity.

5 U.S.C. § 8336(d)(2) (1977 Supp.), *quoted in* 562 F.2d at 345.

Under the caselaw in the Second Circuit interpreting the remedies available under the ADEA, monetary damages, including liquidated damages and back pay, are not recoverable against a labor union. *Air Line Pilots Ass'n v. Trans World Airlines*, 713 F.2d 940, 957 (2d Cir.1983), *reversed on other grounds sub nom. TWA v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Therefore, injunctive relief is the only relief available against the union, and the court has today entered summary judgment against plaintiffs on their request for injunctive relief. Accordingly, there being no cause of action left against the Union upon which relief may be granted, plaintiffs' complaint against the Union is dismissed in all respects.

Having so held, the court need not reach the statute of limitations and estoppel questions raised by the Union in its cross-motion for summary judgment and in its motion to amend its answer.

*Conclusion*

Accordingly, plaintiffs' motion for summary judgment is denied with respect to its request for injunctive relief. Defendants' cross motions for summary judgment are granted with respect to the general validity of their early retirement incentive plan as it currently stands. The union's motion for summary judgment dismissing the complaint against it is granted for the reasons set forth above. Defendants' motions are denied in all other respects. Plaintiffs' motion for summary judgment is granted with respect to the application of defendants' early retirement plan as to them.

Plaintiffs are directed to prepare a proposed judgment and present it to the court for settlement on December 15, 1988, at 9 a.m. The parties are directed to attempt to settle on an appropriate amount for attorneys' fees. If this cannot be done, plaintiffs shall file an affidavit in support of their application by December 15.

So ordered.