**Lorenzo J. PATTERSON, Plaintiff/Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT # 709, et al. Defendants/Appellants.**

**No. 83–2725MN.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided Aug. 29, 1984.

Susan Ginsburg, Duluth, Minn., for plaintiff/appellant.

Gerald A. Pommerville of Edgerton, Theobald & Abelsen, Duluth, Minn., for defendants/appellants.

Before ARNOLD and FAGG, Circuit Judges and DUMBAULD,* Senior District Judge.

DUMBAULD, Senior District Judge.

In order "to promote employment of older persons based on their ability rather than age" and to discourage the common practice of "setting of arbitrary age limits regardless of potential for job performance" [29 U.S.C. § 621], Congress by the Act of December 15, 1967, 81 Stat. 603, 29 U.S.C. § 623(a) provided that:

It shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

However, Congress specified in 29 U.S.C. § 623(f)(2) that:

It shall *not* be unlawful for an employer ... to observe the terms of a bona fide seniority system or any *bona fide employee benefit plan* such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter ... [Italics supplied] [1]

The judicial gloss on these statutory provisions is explained in *Leftwich v. Harris-Stowe State College*, 702 F.2d 686, 690 (8th Cir.1983). Judge Alsop in his opinion below discussed the familiar concepts of "disparate treatment," "disparate impact" and "business necessity." We need not deal with those matters here, since the controlling issue which is contested in the case at bar is whether plaintiff's retirement benefits were calculated pursuant to "a bona fide employee benefit plan" in conformity with § 623(f)(2) quoted above.[2]

As the District Court observes, there is no contest with respect to whether the de-

fendant duly "observed" the terms of its plan in processing plaintiff's retirement. Nor does plaintiff contend that defendant's action constituted a "subterfuge" designed to "evade the purposes" of the age legislation.

We therefore turn to consideration of what constitutes a "bona fide employee benefit plan" and whether the plan under which plaintiff retired meets the applicable criteria.

Several requirements must be met for a plan to receive exemption under § 623(f)(2) from the age discrimination prohibitions imposed by other portions of § 623.

1. The employer's action must "observe" [*i.e.* conform to] the terms of the plan. No contention is made that this requirement has not been complied with.

2. The plan must be a *bona fide* plan.
   This means that it must be a genuine employee benefit plan and not a sham. It must provide substantial benefits for employees. *United Air Lines v. McMann*, 434 U.S. 192, 194, 98 S.Ct. 444, 446, 54 L.Ed.2d 402 (1977); *Zinger v. Blanchette*, 549 F.2d 901, 909 (3rd Cir.1977). An unreasonably infinitesimal benefit would brand the plan as a subterfuge to evade the provisions of the statute.

   No contention is made attacking the plan in the case at bar with respect to this requirement.

3. It must be an *employee benefit* plan; that is, it must provide benefits for employees. *Prima facie* this would include any genuine plan for the benefit of employees. It need not necessarily be a retirement, pension, or insur-

---

* The Hon. Edward Dumbauld, Senior U.S. District Judge of the Western District of Pennsylvania, sitting by designation.

1. 29 U.S.C. § 623(f)(1) also permits otherwise prohibited discrimination "where the differentiation is based on reasonable factors other than age."

2. Defendant argues that the plan is legal under § 623(f)(1) because it was established to effectuate a legislative policy of providing incentives

for teachers to elect early retirement. As Judge Alsop points out, the "factors" rather than the policy or purpose of the plan constitute the statutory touchstone established in § 623(f)(1). Whether promotion of early voluntary retirement is a legitimate policy is material only with respect to the question whether the challenged plan is a "bona fide employee benefit plan" under § 623(f)(2). The plan is not independently justifiable under § 623(f)(1) on that ground.

ance plan; reference to those types of plans is simply by way of illustration. [Thus perhaps a profit-sharing plan or employees stock ownership plan (ESOP) might qualify]. *Alford v. City of Lubbock,* 664 F.2d 1263, 1272 (5th Cir.1982). However, in that case it was held that a separate and independent fringe benefit, such as payment of unused sick leave pay, is not exampt as part of an unrelated retirement or pension plan.[3]

4. Possibly the fringe benefit ruling illustrates the requirement that there must be a *plan* in order to qualify for exemption under § 623(f)(2). Perhaps a plan (since the purpose of the exemption is to afford practicality and flexibility in applying the prohibition against age discrimination) must be a systematic and interrelated structure where consideration of age is an actuarial necessity in order to attain fairness in computing benefits. Thus in the *McMann* case, *supra,* Mr. Justice White observes (434 U.S. at 207, 98 S.Ct. at 452) that "all retirement plans necessarily make distinctions based on age;" and in *Zinger, supra,* (549 F.2d at 910) the court stated that "there is *obviously* discrimination because of age ... in any retirement plan, voluntary or involuntary."

Of course a given employer is not prohibited from maintaining two or more permissible employee benefit plans at the same time.

5. The plan must not be a subterfuge to evade the purposes of the statute to eliminate discrimination based on age. In *McMann* the Supreme Court held that a bona fide plan adopted in 1941 cannot be a subterfuge to evade an Act passed 26 years later in 1967 (434 U.S. at 203, 98 S.Ct. at 450).[4] The main point decided in that case, however, was that an involuntary early retirement was permissible if pursuant to a bona fide retirement plan which was not a subterfuge. From this it follows *a fortiori* that a *voluntary* early retirement plan is permissible under § 623(f)(2).

Consideration must now be given to the features of the assailed plan, to determine whether it qualifies for approval under § 623(f)(2) under the criteria herein above set forth.

It seems clear that the "Teacher early retirement incentive program" enacted by Minnesota effective April 25, 1980, pursuant to which plaintiff retired on July 12, 1981, at age 67, is designed to supplement the general pension plan theretofore in effect. The general plan would normally afford an older teacher a higher retirement pay than a younger teacher, since years of service are taken into account in calculating the pension. The new plan, it was hoped, would furnish an incentive for teachers to trigger or activate the general pension plan at an earlier age, by holding out the "carrot" of "an early retirement

---

**3.** A similar result, citing *Alford,* was reached in a District Court case, *EEOC v. Borden's, Inc.,* 551 F.Supp. 1095 (D.Ariz.1982) where a collective bargaining agreement provided for severance pay upon closing of the plant, excluding employees eligible for normal or early retirement. This decision is questionable. Severance pay was *granted* in *Borden's* to employees *ineligible* for retirement, as a *solatium* for the plant closing. *Eligible* employees received retirement benefits when their employment ceased. There is a difference between disemployment "with and without a pension; the financial effect of the latter being the same as outright discharge." *Zinger, supra,* 549 F.2d at 908. In such a case it may plausibly be argued that the severance pay is an integrated feature of the retirement plan. In *Alford,* however, the benefit of sick leave pay was granted only to employees *eligible* for retirement, not to those *ineligible.* This was clearly an independent, unrelated fringe benefit not part of an integrated plan.

**4.** The Fourth Circuit had held in *McMann* (542 F.2d at 220) (and Justices Marshall and Brennan, in dissent, agreed) that involuntary early retirement was prohibited (434 U.S. at 198, 216). The Third Circuit in *Zinger* (549 F.2d at 904–905) had also disagreed with the Fifth Circuit's *per se* rule that plans pre-dating 1967 could not possibly be subterfuges to evade the purposes of the statute. Those Circuits pointed to the distinction between "evading the *purposes*" of the statute and evading the *terms* of the statute itself.

incentive in the amount of $10,000" if eligible for normal retirement at 55. Minnesota Statutes Annotated, § 125.611(8). The "carrot" is diminished by $500 for each year over age 55 until 60, and by $1500 for each year over 60. This plan is entirely voluntary. A teacher desiring early retirement must apply for it. M.S.A. § 125.-611(3). The time and manner of payment is determined by mutual agreement of the teacher and the school board; the State pays half of the amount in a lump sum to the board.

Another provision of Minnesota law authorizes payment of "severance pay" to teachers who quit work "on or before or subsequent to the normal retirement date. Severance pay shall also include the payment of accumulated vacation leave, accumulated sick leave or a combination thereof." M.S.A. § 465.72. This provision makes the matter of "severance pay" discretionary with the board, and defines the term "severance pay" in a manner permitting inclusion, at the board's option, of accumulated sick or vacation leave. It permits payment of severance pay in case of early retirement, but also in case of normal or late retirement.

As a result of collective bargaining and arbitration, the precise plan utilized by plaintiff and his employer was formulated. Presumably it falls within the statutory discretion vested by § 465.72 as well as the requirements of § 125.611. [In any event that is a matter of State law. Our problem is whether it satisfies 29 U.S.C. 623(f)(2) ].

As stated above under point 5 of our discussion of the requirements of § 623(f)(2), a *voluntary* early retirement plan is *a fortiori* permissible, since the Supreme Court in *McMann, supra,* approved an involuntary early retirement plan. An *early* retirement plan is certainly a *"retirement . . .* plan," which if bona fide is exempted by § 623(f)(2).[5]

Moreover, as the District Court noted, the decision regarding a federal civil ser-vice plan to promote voluntary early retirement in mitigation of the widespread and inevitable unemployment which would otherwise attend a large-scale reduction in force, is particularly instructive. In *Mason v. Lister,* 562 F.2d 343, 346–47 (5th Cir. 1978), it was emphasized that a voluntary plan did not give the employer power to "forcibly retire older workers" and hence did not "conflict with the Congressional goal" of promoting employment of older persons "based on their ability rather than age."

Moreover, the *Mason* case is especially persuasive inasmuch as two enactments by the same legislative body were involved, and plaintiff raised the question whether the early retirement act of 1973 had been repealed by implication when the age discrimination act of 1974 was enacted. (562 F.2d at 345). Under the maxim *lex posterior derogat legi priori* such repeal would have occurred if any conflict had been ascertained to exist. The case is therefore strong authority for the conclusion that a policy of promoting early retirement is entirely compatible with § 623(f)(2).

The plan therefore being intrinsically valid, it is not vitiated by the fact that by reason of the chronological sequence of events plaintiff could not take advantage of all its ramifications. The plan became effective in 1980; plaintiff retired in 1981. He was then 67, and naturally could not exercise the options that would have been open to him had he been younger.

A person who reached retirement age during the Great Depression before the enactment of the Social Security Act could not claim benefits that a person later reaching the age of retirement under the provisions of the Act would be entitled to. Neither could a school teacher obtain benefits under a plan not yet in existence when he attains the age specified for the benefit.

Obviously a man of 67 can not retire at age 55 and obtain benefits provided for

---

**5.** And, as pointed out in point 4 *supra,* age distinctions are necessarily inherent in any re-tirement plan.

persons of that age. And to effect the purpose of encouraging early retirement, the sliding scale of diminishing benefits is manifestly appropriate.

Accordingly, since the challenged plan escapes condemnation under § 623(f)(2), the judgment of the District Court is

AFFIRMED.