**Earl BOHM, et al., Respondents,**

v.

**INDEPENDENT SCHOOL DIST. NO. 283, ST. LOUIS PARK, Minnesota, Appellant.**

**No. C9–84–426.**

Court of Appeals of Minnesota.

Nov. 20, 1984.

Marko Mrkonich, Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, for respondents.

Pat Maloney, Joseph E. Flynn, Peterson, Knutson, Flynn & Hetland, St. Paul, for appellant and amicus curiae MN School Boards Association.

Heard, considered, and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

HUSPENI, Judge.

Seven retired school teachers brought an action to recover statutory early retirement incentives allegedly owed them by the school district pursuant to Minn.Stat. § 125.611 (1980). The school district denied any obligation to pay incentives because it had already paid the teachers sev-erance pay. It claims that severance pay qualified as early retirement incentive pursuant to Minn.Stat. § 125.611 (1980) and the teachers are not entitled to an additional incentive grant.

The trial court entered judgment in favor of the teachers. We affirm.

## FACTS

Respondents are former St. Louis Park teachers who chose to take early retirement at the end of the 1979–80 school year before reaching 65 years of age. Their collective bargaining agreement provided for severance pay to eligible teachers upon early retirement.

In 1977 the Minnesota legislature enacted Minn.Stat. § 125.611, the Teachers Early Retirement Incentive Plan (TERIP). This statute encouraged school districts to adopt local severance plans to provide financial incentives for teachers to leave the profession before the normal retirement age of 65, thus enabling younger teachers to obtain employment. Originally, the law provided for a 10% reimbursement to school districts which paid incentives to teachers meeting certain requirements to retire early. The statute was amended in 1978 and 1979 to provide 25% and 50% reimbursement respectively.

In spring 1980, respondents submitted unconditional resignations effective at the close of their contract year. Most of them met individually with school administrators concerning early retirement benefits. Each received severance pay pursuant to their collective bargaining agreement in the following amounts:

| Earl Bohm | $12,387.20 |
| Matilda Johnson | 10,883.06 |
| Donald Schutte | 4,500.00 |
| Cornelia Squibb | 8,978.52 |
| Pearl Sundstrom | 11,897.81 |
| Wesley Ulrich | 4,407.37 |
| Ray Zakariasen | 2,338.00 |

None asked about early retirement incentive grants. School officials made no representations that the teachers would get TERIP early retirement incentive grants,

in addition to the severance pay. A condition of the severance pay agreement provided that, in the future, respondents would not teach in the district from which they were retiring.

In June 1980, after the teachers retired, the St. Louis Park director of personnel services mailed each respondent a TERIP application. A cover letter requesting their signatures referred to the application by its title "Teacher Early Retirement Incentive Program Application for Participation and State Reimbursement." Six of the teachers signed and returned the applications. The district personnel director signed the application on behalf of the seventh teacher. The applications provided that the teachers agreed not to teach in any district in this state. All of the teachers believed they would receive the incentive grants referred to in the TERIP applications in addition to the severance pay they had already received.

The school district superintendent certified to the Commissioner of Education that the district would pay each teacher an early retirement incentive upon receipt of state funds. The amounts so certified were as follows:

| | |
|---|---|
| Earl Bohm | $ 4,500.00 |
| Matilda Johnson | 4,500.00 |
| Donald Schutte | 1,500.00 |
| Cornelia Squibb | 10,000.00 |
| Pearl Sundstrom | 9,000.00 |
| Wesley Ulrich | 1,500.00 |
| Ray Zakariasen | 8,000.00 |

Ms. Squibb, of course, had received only $8,978.52 under the severance pay plan. The school district admits that Ms. Squibb has not been adequately compensated even under the district's interpretation of TERIP.

After the teachers submitted the applications to the school board, two of them asked the district personnel director whether they would receive TERIP payments in addition to their severance pay. The director told them they would not.

In June 1982, the school district received $19,500.00 as partial reimbursement for the severance payments made. The board refused the teachers' request for the additional TERIP payments.

## ISSUE

Did the trial court err in interpreting Minn.Stat. § 125.611 (1980) as entitling respondents to an early retirement grant under the statute in addition to their negotiated severance pay?

## ANALYSIS

■ This case was tried by the trial court sitting without a jury. No motions for amended findings of fact were made. Generally our scope of review under these circumstances would be limited to determining whether the trial court's findings are clearly erroneous and whether it erred in its legal conclusions. *Leininger v. Anderson*, 255 N.W.2d 22, 27 (Minn.1977). However, where a decision rests primarily upon documentary evidence, we are not bound by the trial court's interpretation. *Fidelity Bank and Trust Co. v. Fitzimons*, 261 N.W.2d 586, 588–89 (Minn.1977). Here, a majority of the evidence was documentary. The record consists of 94 exhibits and a scant trial transcript. Therefore, this review is essentially a de novo one.

We view as critical the issue of whether severance payments made to the teachers qualify under TERIP, thus entitling the school district to partial reimbursement from the state. Minn.Stat. § 125.611 (1980) reads in relevant part:

Subd. 3. A teacher * * * may apply to the school board of the employing district for a contract for termination of his services, withdrawal from active teaching service, and payment of an early retirement incentive.

\* \* \* \* \* \*

Subd. 5. If the school board approves the teacher's application, the board shall apply to the commissioner of education for authorization to enter into a contract with the teacher for termination of his services and payment of an early retirement incentive.

\* \* \* \* \* \*

Subd. 7. A teacher whose early retirement pursuant to this section has been approved by the commissioner of education shall be offered a contract for termination of services in the employing district, withdrawal from active teaching service, and payment of an early retirement incentive by the employing school district.

\* \* \* \* \* \*

Subd. 10. The early retirement incentive shall be paid by the employing school district at the time and in the manner mutually agreed upon by a teacher and the board. The state shall reimburse the district for 50 percent of any amount or amounts paid out as an early retirement incentive pursuant to this section.

This statute is susceptible of more than one reasonable interpretation. Construction of statutes is governed by Minn.Stat. § 645.16 (1982) which provides:

When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters:

(1) The occasion and necessity for the law;

\* \* \* \* \* \*

(6) The consequences of a particular interpretation;

(7) The contemporaneous legislative history; and

(8) Legislative and administrative interpretations of the statute.

▇ The school district urges that both legislative history and administrative procedures demonstrate that payments under TERIP were intended to reimburse this school district for severance payments and were not intended to be an additional payment to respondents. The trial court did not address either the issue of legislative history or that of administrative procedures. We recognize that legislative transcripts and practical construction of a statute by administrative officials who work daily with the statute are to be given great weight in construing a statute. *Moberg v.*

*Independent School Dist. No. 281,* 336 N.W.2d 510, 517 (Minn.1983); *Goodman v. State, Department of Public Safety,* 282 N.W.2d 559 (Minn.1979). Legislative committee hearing transcripts present here do seem to indicate that legislators considered severance pay and early retirement pay to be interchangeable concepts or terms under Minn.Stat. § 125.611 when severance pay plans met the qualifications of that statute. Administrators of the TERIP program have reimbursed other school districts for payments made under a negotiated severance pay plan which met the minimum requirements of Minn.Stat. § 125.611. Such evidence is entitled to weight in construing an ambiguous statute.

▇ However, where plaintiffs present evidence that the administrative practice is unfair, such evidence is also entitled to weight in construing an ambiguous statute. *Id.* at 560. Under the circumstances here present, we do not find either the legislative history or previous administrative procedures to be controlling. We conclude instead that the severance pay plan contained in the teachers' collective bargaining agreement and the plan set forth in TERIP are independent of one another. The trial court so found, recognizing that the school district's legal counsel had also advised his clients to that effect. The collective bargaining agreement severance pay plan fails to qualify as TERIP under the plain language of Section 125.611 in at least one critical respect. Under the severance pay program, the teachers promised not to teach again in the district from which they were retiring. When the teachers signed the TERIP application, they agreed never to teach again in any district in the state. There is evidence in the record indicating that at least one of the seven teachers, Ray Zakariasen, was negotiating for a teaching position in a district other than the one from which he retired when the TERIP applications were signed. The teachers contend their promise to teach nowhere in the state is consideration which supports an implied contract obligating the school district to pay the additional TERIP bene-

fits. We agree that an implied contract was created.

We are not insensitive to the arguments of the school district regarding what it intended when it requested completion of the TERIP forms by the teachers. However, this situation is one of the board's own creation. It failed to first assure the severance plan did, in fact, meet the TERIP requirements. When the district asked the teachers to sign the TERIP applications, it failed to inform them that the forms were being utilized solely to obtain reimbursement for severance payments the teachers had already received.

We recognize that amicus suggests an alternative disposition allowing the school district to return the $19,500 to the state, and rescind the TERIP contracts with the teachers. However, over four years have passed since the teachers signed the contracts and gave up their right to teach in this state. The value of that right has certainly diminished with the passage of time. Its return would be a hollow victory.

### DECISION

We affirm the trial court's finding that the school district solicited the teachers' applications for participation in TERIP and elicited an additional promise to withdraw from active teaching in the state. From this action, the teachers reasonably believed they were entitled to the additional TERIP grant and their promise not to teach supports an implied contract obligating the school to pay. Therefore, the school district must pay the teachers.

Affirmed.