**Michael R. HAMILTON, individually and on Behalf of all other persons similarly situated, Plaintiff–Appellant,**

v.

**CATERPILLAR INCORPORATED, a Delaware Corporation, Defendant–Appellee.**

No. 91–2567.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1992.

Decided July 16, 1992.

Leonard N. Flamm (argued), Norman Mednick, New York City, Earl A. Payson, Nagle, Harris, Cook & Payson, Davenport, Iowa, for plaintiff-appellant.

Michael A. Warner (argued), J. Stephen Poor, John T. Murray, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Theodore R. Johnson, Caterpillar Inc., Peoria, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

In January 1986, Caterpillar announced that it was thinking about closing its plants in Davenport and Bettendorf, Iowa. Soon thereafter, Caterpillar began negotiations with Local 215 of the United Automobile, Aerospace and Agricultural Implement Workers of America, which represented Caterpillar's employees at the Iowa plants.

As a result of the negotiations, in July 1986 Caterpillar agreed to establish a Special Early Retirement Program when and if the plants closed. Caterpillar's existing pension plan provided early retirement benefits to workers 60 years or older with 10 years of service and to workers 55 years or older with terms of service, that, when added to their age, totaled 85. The supplemental plan extends those early retirement benefits to workers 50 or older with 10 years of service.

The Davenport and Bettendorf plants were indeed shut down and all of Caterpillar's employees were laid off by June 1988. In 1990, Michael Hamilton brought a class action against Caterpillar, alleging that the Special Early Retirement Program violates the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* (1988) (ADEA). The substance of the claim is more than a little bizarre: Hamilton and the other members of his class are between the ages of 40 and 50; they had ten years of service when the plants closed; and they are suing Caterpillar because they were too *young* to qualify for early retirement benefits.

The district court dismissed Hamilton's claim with prejudice. Judge Mihm held that the ADEA does not prohibit reverse age discrimination. Order at 9 (May 30, 1991). Assuming that the ADEA does prohibit reverse age discrimination, however, the court also held that the Special Early Retirement Program is a bona fide employee benefit plan protected by section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2). *Id.* at 10. We need reach only the first holding to affirm.

## I.

This is the first time a reverse age discrimination case has reached this court. Nonetheless, we have opined that the ADEA "does not protect the young as well as the old, or even, we think, the younger *against* the older." *Karlen v. City Colleges of Chicago,* 837 F.2d 314, 318 (7th Cir.), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988) (emphasis in original). Other circuit courts have made

similar statements, again without facing the issue head-on. *See, for example, Schuler v. Polaroid Corp.,* 848 F.2d 276, 278 (1st Cir.1988) (the ADEA "does not forbid treating older persons *more* generously than others"). One district court in this circuit has squarely held that the ADEA does not authorize reverse discrimination suits. *Wehrly v. American Motors Sales Corp.,* 678 F.Supp. 1366, 1380–83 (N.D.Ind. 1988). There are no cases to the contrary.

Hamilton argues that age discrimination is like race or sex discrimination—it cuts both ways. On its face, the argument is implausible. Age is not a distinction that arises at birth. Nor is age immutable (leaving the claims of plastic surgeons aside). *See Mason v. Lister,* 562 F.2d 343 (5th Cir.1977) (rejecting Equal Protection challenge to NASA early retirement program). There is nothing to suggest that Congress believed age to be the equal of youth in the sense that the races and sexes are deemed to be equal.

The age limits in the statute are consistent with our observations. The ADEA allows individuals only 40 years and older to sue. 29 U.S.C. § 631(a). If the Act were really meant to prevent reverse age discrimination, limiting the protected class to those 40 and above would make little sense. To illustrate the point, imagine that only racial minorities and women could bring suit under Title VII. If Title VII so limited the plaintiff class, we would be unlikely to read that statute to prohibit reverse discrimination either.

We cannot end our analysis, however, without noting that the Equal Employment Opportunity Commission appears to take the same view of the ADEA as Hamilton. The relevant regulation provides:

> It is unlawful in situations where this Act applies, for an employer to discriminate in hiring or in any other way by giving preference because of age between individuals 40 and over. Thus, if two people apply for the same position, and one is 42 and the other 52, the employer may not lawfully turn down either one on the basis of age, but must make

such decision on the basis of some other factor. 29 C.F.R. § 1625.2(a) (1991). Moreover, there is some arguable support for this position in the statute itself. Phrases like "because of such individual's age," "on the basis of such individual's age," or "because of his age" lend themselves to an interpretation that prohibits use of age as a factor, period. *See* 29 U.S.C. §§ 623(a)(1), (a)(2), (b), (c)(1) & (c)(2). Finally, Hamilton points to a phrase in the Act's statement of purpose: "to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b).

We have located only two references to regulation 1625.2, cited *supra*, in the case law. In each case, the regulation is cited for the proposition that an older plaintiff may maintain a cause of action under the ADEA even if his replacement is over 40. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1411 n. 4 (7th Cir.1984); *Miller v. Lyng*, 660 F.Supp. 1375, 1377–78 n. 2 (D.D.C.1987). We have no quarrel with this limited interpretation of regulation 1625.2. But to the extent that regulation 1625.2 can be read to authorize reverse age discrimination suits, we think that it exceeds the scope of the statute.

The findings that precede the congressional statement of purpose in section 621 refer specifically to the problems faced by "older workers" and "older persons." 29 U.S.C. §§ 621(a)(1), (a)(2) & (a)(3). In context, we believe that the phrase "arbitrary age discrimination" refers to Congress's understanding that discriminating against *older people* on the basis of their age is arbitrary. *See Dorsch v. L.B. Foster Co.*, 782 F.2d 1421, 1428–29 (7th Cir.1986) (discussing purposes of the ADEA). There is no evidence in the legislative history that Congress had any concern for the plight of workers arbitrarily denied opportunities and benefits because they are too *young*. Age discrimination is thus somewhat like handicap discrimination: Congress was concerned that older people were being cast aside on the basis of inaccurate stereotypes about their abilities. The young, like the non-handicapped, cannot argue that they are similarly victimized.

The prohibitions in section 623 may be somewhat overinclusive, but the language Congress used is also more economical than the more precise alternatives. Perhaps Congress should have written "because such individual is older" or "on the basis of such individual's advancing age," but we are unwilling to open the floodgates to attacks on every retirement plan because Congress chose more graceful language. *Karlen*, 837 F.2d at 318.

II.

The ADEA does not provide a remedy for reverse age discrimination. Accordingly, the judgment of the district court is AFFIRMED.