STATE of Minnesota, by David BEAU-LIEU, Commissioner, Department of Human Rights, Respondent,

v.

INDEPENDENT SCHOOL DISTRICT NO. 624, Respondent,

and

White Bear Lake Teachers' Association (MEA), intervenor, Relator.

No. C1–93–1190.

Court of Appeals of Minnesota.

Dec. 14, 1993.

Review Granted Feb. 24, 1994.

Hubert H. Humphrey, III, Atty. Gen., Erica K. Jacobson, Asst. Atty. Gen., St. Paul, for State of Minnesota, by David Beaulieu, Commissioner, Department of Human Rights, respondent.

Joseph E. Flynn, Diane M. Cornell, Knutson, Flynn, Hetland, Deans & Olsen, P.A., St. Paul, for Independent School Dist. No. 624, respondent.

Rebecca H. Hamblin, Harley M. Ogata, Minnesota Educ. Ass'n, St. Paul, for relator.

Considered and decided by KLAPHAKE, P.J., and PETERSON and HARTEN, JJ.

## OPINION

HARTEN, Judge.

We review by writ of certiorari a decision of an administrative law judge (ALJ) holding that an early retirement incentive program is discriminatory under the age protection provisions of the Minnesota Human Rights Act as applied to a 36 year old employee who does not meet the minimum age requirement for benefits. We disagree and reverse.

## FACTS

In December 1976, Colleen Leemon began her employment with respondent Independent School District No. 624 (ISD) in White Bear Lake. During the next ten years, Leemon held several administrative positions for the district and ultimately advanced to a position as Director of Finance. In March 1987, at age 36, Leemon voluntarily terminated her ISD employment.

As an administrator, Leemon was subject to the 1987 contract between ISD and the White Bear Lake Principals' Association. Under article XIII of the contract entitled "Early Retirement," Leemon was ineligible for "severance pay" because, although she had satisfied the 10 year service requirement, she had not attained the minimum age of 45. Similarly, Leemon was ineligible for extended medical, dental, and life insurance coverage. Under the contract, administrators aged 45 to 60 were allowed severance pay for early retirement purposes in an amount equaling 100% of salary for the current school year. Administrators retiring at age 61 were eligible to receive 75% of salary and those retiring at age 62, 50%. Retirees terminating employment at ages 63 to 70 were not entitled to such pay. Insurance coverage for early retirees extended for 10 years. No separate article providing for severance pay was included in the contract. The contract is expressly subject to all applicable laws; any provision found to be in violation of law would be severed.

Correspondingly, under the most recent contract of respondent White Bear Lake Teachers' Association covering 1991 through 1993 (which is subject to a cease and desist order as a result of this litigation), early retirement benefits equal 100% of salary for a contract year for members retiring between the ages 45 and 60, 90% for members retiring at age 61, 75% at age 62, 60% at age 63, 45% at age 64, and 30% at age 65. No early retirement pay is allowed for those retiring over age 65. The contract also contains an option B, which provides early retirement benefits for teachers with 25 years of service, regardless of age. The teachers' association has identified the purposes of the teachers' early retirement program as: an income buffer for those who wish to retire early; a means of providing jobs for new workers; a means to "reinvigorate" the work force by preventing "burnout;" and, a method of cost savings that benefits both the district and teachers' association.

In June 1987, Leemon filed a charge of age discrimination with respondent Minnesota Department of Human Rights (department). That October, the department issued a probable cause finding of age discrimination under the Human Rights Act, Minn.Stat. ch. 363 (1986). In May 1992, the department issued a complaint and notice of hearing, alleging discrimination against Leemon and a class of early retirees aged 60 and older. In August 1992, the department moved for summary judgment. The ALJ granted partial summary judgment for the department in October 1992.

In March 1993, the ALJ granted a petition by the teachers' association to intervene as a party. In May 1993, the ALJ ordered summary judgment against ISD allowing Leem-

on damages totaling approximately $106,000, including severance pay of approximately $52,000, and the remainder for past and future out of pocket health, dental, and life insurance premium expenses over a ten year period. The ALJ also granted summary judgment in favor of ISD on the class action, but issued a cease and desist order against ISD.[1] On the petition of the teachers' association, a writ of certiorari was issued to review the ALJ's decision. ISD filed a notice of review.

## ISSUE

Did the ALJ err in determining that the 1987 contract between ISD and the principals' association permitted age discrimination in violation of the Minnesota Human Rights Act because it denied a 36 year old employee early retirement benefits?

## ANALYSIS

Statutory construction is a question of law and is reviewed de novo. *See A.J. Chromy Constr. Co. v. Commercial Mechanical Servs.*, 260 N.W.2d 579, 582 (Minn.1977). An appellate court need not defer to an administrative decision on a question of law. *St. Otto's Home v. Minnesota Dep't of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn. 1989).

The ALJ rejected ISD's application of exemptions under the Human Rights Act. Minn.Stat. § 363.03, subd. 1(2) (1986) prohibits discrimination in employment based on age. The protected class includes anyone over the age of majority (age 18 in Minnesota). *See* Minn.Stat. § 363.01, subd. 28. (1986); *see also* Minn.Stat. 645.451, subd. 5 (1986).

Minn.Stat. § 363.02, subd. 1(4) (1986), however, permits

[t]he operation of a bona fide seniority system which mandates differences in such things as wages, hiring priorities, layoff priorities, vacation credit, and job assignments based on seniority, so long as the

operation of the system is not a subterfuge to evade the provisions of chapter 363.

Minn.Stat. § 363.02, subd. 1(5) (1986) also allows

[w]ith respect to age discrimination, a practice by which a labor organization or employer offers or supplies varying insurance benefits or other fringe benefits to members or employees of differing ages, so long as the cost to the labor organization or employer for the benefits is reasonably equivalent for all members or employees.

Minn.Stat. § 363.02, subd. 6 (1986) provides a further exception to the Human Rights Act:

Nothing in this chapter shall be construed to prohibit the establishment of differential privileges, benefits, services, or facilities for persons of designated ages if (a) *such differential treatment is provided pursuant to statute*, or (b) the designated age is greater than 59 years or less than 21 years.

(Emphasis added.)

The preceding "pursuant to statute" provision of section 363.02, subdivision 6, accommodates the "Teacher Early Retirement Incentive Program" (TERIP), Minn.Stat. § 125.611 (1992). TERIP authorizes early retirement for teachers retiring in the age range of 55 to 65 with 15 years of service, or teachers with 30 years of service without regard to age. *Id.* "Teachers" under TERIP include "all persons employed in a public school as members of the instructional and supervisory staff." Minn.Stat. § 125.03, subd. 1 (1986). Minn.Stat. § 125.611, subd. 10 (1986) allowed 50% reimbursement by the state to participating school districts. Minn. Stat. 125.611, subd. 8 (1986) established a maximum benefit of $10,000 at age 55, decreasing by $500 per year for those retiring in the age 55 to 60 range, and by $1,500 per year for those retiring after age 60. Subdivisions 8 and 10 were repealed in 1987. *See* 1987 Minn.Laws ch. 398, art. 7, § 43. TERIP, however, is not the only program appropriate for consideration as an exception to

---

**1.** The order required ISD to cease "from discriminating on the basis of age" consistent with the adjudication of Leemon's case.

the Human Rights Act under Minn.Stat. § 363.02, subd. 6.

Minn.Stat. § 465.72, subd. 1 (1986) must also be considered. The statute grants school districts the authority to adopt rules for severance pay, in amounts not exceeding one year of pay.

> [A]ny county, city, township, school district or other governmental subdivision may pay severance pay to its employees and promulgate rules for the payment of severance pay to an employee who leaves employment.

Minn.Stat. § 465.72, subd. 1. Under the Federal Age Discrimination in Employment Act (ADEA), the United States Eighth Circuit Court of Appeals upheld a school district's voluntary early retirement program under section 125.611 and also presumed that it fell "within the statutory discretion vested by [section] 465.72." *Patterson v. Independent Sch. Dist. No. 709*, 742 F.2d 465, 468 (8th Cir.1984) (analyzing 29 U.S.C. § 623 (1967) and leaving open further interpretation of sections 125.611 and 465.72 as a matter of state law). Section 465.72 requires that severance pay be excluded from retirement benefit calculations and "shall be paid in a manner mutually agreeable to the employee and employer." No age provisions or declining benefit schedule comparable to earlier and current versions of section 125.611 burden section 465.72. *Patterson* recognized that early retirement incentive purposes (a diminishing "carrot" to "promote voluntary early retirement in mitigation of widespread and inevitable unemployment") were found not inconsistent with congressional intent under the ADEA. 742 F.2d at 467–68. Leemon's case does not involve a claim of constructive discharge. *Compare Anderson v. Northwestern Nat'l Life Ins. Co.*, 480 N.W.2d 363, 367–68 (Minn.App.1992) (voluntary early retirement incentive program did not rise to the level of constructive discharge as related to claims of age discrimination under the Human Rights Act); *Shea v. Hanna Mining Co.*, 397 N.W.2d 362, 369 (1986) (same).

We concede the disparate treatment alleged by Leemon under an isolated reading of the age discrimination provisions of the Human Rights Act.[2] From our reading of the relevant statutes, however, it is clear that the Human Rights Act contains specific exceptions for early retirement incentives and severance programs; the question becomes whether the principals' association early retirement program falls within any of the specific statutory exceptions. In *Bohm v. Independent Sch. Dist. No. 283*, 358 N.W.2d 146 (Minn.App.1984), teachers received severance pay from a school district, but were denied TERIP benefits. *Id.* at 147–48. This court held that the severance pay agreement and TERIP were mutually exclusive because the teachers' agreement failed to satisfy the TERIP requirement that applicants agree never to teach again in the state. *Id.* at 149–50.[3]

Similarly here, the principals' association program at issue cannot be "pursuant to" section 125.611, because it fails to meet the applicable age requirements. Section 363.02, subdivision 1(5) is also unavailing because the costs to ISD have not been shown to be "reasonably equivalent" between qualifying and non-qualifying members.

We believe, however, that the severance pay provisions of section 465.72 authorize the principals' association program, which is clearly designed to serve a legitimate early retirement incentive purpose as exemplified by the declining benefits formula. *See, e.g., Patterson*, 742 F.2d at 467–68. As applied to the Human Rights Act, we note, but do not further rely upon, the dicta of the federal circuit court in *Patterson* regarding the discretion presumably accorded school districts under section 465.72. *See id.* at 468. Because of the discretion we believe allowed to school districts by section 465.72, we need not address the decision of the collective bargaining participants in negotiating a particular minimum age in this case.

---

2. We also acknowledge the relative ease of avoiding age discrimination disputes by basing eligibility on years of service, not age.

3. *See also* Op.Att'y Gen. 175 (July 25, 1984) (recognizing that a school district may establish severance pay program under section 465.72 independently from a section 125.611 program).

We note that on facts similar to the present case, the United States Seventh Circuit Court of Appeals in *Hamilton v. Caterpillar Inc.*, 966 F.2d 1226, 1227–28 (7th Cir.1992) rejected a "reverse" discrimination claim under the ADEA by a class of workers between the ages of 40 and 50 who failed to qualify for early retirement benefits in a plan with a minimum age of 50, despite the ADEA protection of individuals between the ages of 40 and 70. 29 U.S.C. 631(a) (Supp. III 1991). The *Hamilton* court recognized that despite regulatory and statutory language suggesting that age could not be used as a differential factor, the ADEA's legislative intent and stated purpose protected "older" individuals and provided no protection to " 'the younger *against* the older.' " *Id.* at 1227 (quoting *Karlen v. City Colleges of Chicago*, 837 F.2d 314, 318 (7th Cir.1988), *cert. denied*, 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988)).

Because of our disposition of this case under section 465.72, and because of differences between the ADEA and the Human Rights Act, we do not directly rely on *Hamilton*. We otherwise express no opinion on the broader question of "reverse" age discrimination protection under the Human Rights Act.

Having held that the principals' association program at issue is authorized by section 465.72, we also hold that the teachers' association program is authorized by section 465.-72. Since this case involves direct statutory application to undisputed facts, we need not reach procedures under *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as required by *Sigurdson v. Isanti County*, 386 N.W.2d 715, 716 (Minn.1986) in cases involving circumstantial discrimination. *See also State by Cooper v. Hennepin County*, 441 N.W.2d 106, 110 n. 1 (Minn.1989) (disparate treatment analysis unnecessary where treatment was undisputedly based on physical impairment). Finally, we deny the teachers' association's motion to "modify the record" as an attempt to introduce immaterial information not of record.

## DECISION

The early retirement incentive agreements negotiated between ISD and the principals'

and teachers' associations are authorized by section 465.72 and accordingly do not violate the age discrimination provisions of the Minnesota Human Rights Act. Leemon's award and the cease and desist order against ISD are reversed.

**Reversed.**

PETERSON, Judge (dissenting).

I respectfully dissent.

The Human Rights Act prohibits age discrimination with respect to employee compensation:

[I]t is an unfair employment practice:

\*     \*     \*     \*     \*     \*

(2) For an employer, because of \* \* \* age,

\*     \*     \*     \*     \*     \*

(c) to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn.Stat. § 363.03, subd. 1 (1986).

The severance pay provision in Leemon's contract states:

Administrators who have completed at least ten (10) years of continuous service with the School District and who are at least forty-five (45) years of age shall be eligible for *severance pay*, pursuant to the provisions of this Article, upon submission of a written resignation accepted by the School Board by April 1st.

(Emphasis added.)

This contract provision restricts eligibility for severance pay on the basis of age. It could not do so more clearly. Only employees who are at least forty-five years old may receive severance pay.

Leemon was denied severance pay because she was not yet 45 years old. Her age was the sole basis for the district's refusal to pay her severance pay. There could be no other basis because Leemon met the other requirements for receiving severance pay. Leemon was a victim of age discrimination with respect to compensation.

The majority correctly states that the Human Rights Act does not prohibit all acts of

age discrimination. Minn.Stat. § 363.02, subd. 6 (1986) provides in part:

> Nothing in this chapter shall be construed to prohibit the establishment of differential privileges, benefits, services, or facilities for persons of designated ages if (a) such differential treatment is provided pursuant to statute, or (b) the designated age is greater than 59 years or less than 21 years.

The majority concludes that the age discrimination Leemon suffered is permitted under clause (a) because the differential treatment in Leemon's contract is provided pursuant to Minn.Stat. § 465.72, subd. 1 (1986). Specifically, the majority concludes that the authority to adopt rules for the payment of severance pay granted to the school district by section 465.72 includes authority to adopt rules that discriminate against employees on the basis of age when the rules serve a legitimate early retirement incentive purpose. I see no basis for this conclusion.

> Minn.Stat. § 465.72, subd. 1 provides:
>
> Except as may otherwise be provided in Laws 1959, chapter 690, as amended, any county, city, township, school district or other governmental subdivision may pay severance pay to its employees and promulgate rules for the payment of severance pay to *an employee who leaves employment* on or before or subsequent to the normal retirement date. Severance pay shall also include the payment of accumulated vacation leave, accumulated sick leave, or a combination thereof. The severance pay shall be excluded from retirement deductions and from any calculations in retirement benefits. It shall be paid in a manner mutually agreeable to the employee and employer and, except as provided in subdivision 2, over a period not to exceed five years *from retirement or termination of employment.* If a *retired or terminated employee* dies before all or a portion of the severance pay has been disbursed, that balance due shall be paid to a named beneficiary or, lacking some, to the deceased's estate. Except as provided in subdivision 2, in no event shall severance pay provided for an employee leaving employment exceed an amount equivalent to one year of pay.

(Emphasis added.)

Minn.Stat. § 465.72, subd. 1 authorizes political subdivisions to pay severance pay to employees who terminate their employment. It does not limit this authority to employees who terminate their employment by retiring and it does not distinguish between employees who terminate their employment to retire and those who terminate their employment for some other reason. *See id.*

Minn.Stat. § 465.72, subd. 1 refers specifically to "retirement or termination of employment" and to "retired or terminated" employees. This demonstrates that the legislature considered severance pay to be compensation paid to an employee who leaves employment to retire, or for some other reason.

Although the statute expressly authorizes adoption of "rules for the payment of severance pay to *an employee who leaves employment* ", nothing in the statute suggests that the rules may discriminate against employees on the basis of age. *Id.* (emphasis added). The language of the statute does not support a construction that the legislature intended to permit differential treatment among employees when severance pay is paid as an "early retirement incentive."

The majority cites *Patterson v. Independent Sch. Dist. No. 709,* 742 F.2d 465 (8th Cir.1984) as support for its conclusion that a voluntary early retirement program is within the discretion given the school district by Minn.Stat. § 465.72, subd. 1. This reliance is misplaced. *Patterson* involved interpretation of 29 U.S.C. § 623(f)(2) (Supp. II 1978), a provision in the Federal Age Discrimination in Employment Act. 742 F.2d at 466. The court in *Patterson* specifically declined to decide whether the challenged early retirement program was permitted by Minn.Stat. § 465.72. *Id.* at 468. The court stated:

> Presumably it falls within the statutory discretion vested by § 465.72 as well as the requirements of § 125.611. [In any event

that is a matter of State law. Our problem is whether it satisfies 29 U.S.C. 623(f)(2) ].

*Id.*

Furthermore, the issue in *Patterson* was whether the plaintiff's retirement benefits were calculated pursuant to a bona fide employee benefit plan. *Id.* at 466. 29 U.S.C. § 623(f)(2) creates an exception from the federal prohibition against age discrimination in employment for

> a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter.

Unlike the federal act, however, the Minnesota Human Rights Act does not contain an exception from its prohibition against age discrimination in employment for any bona fide employee benefit plan. *See* Minn. Stat. §§ 363.01–.14 (1986). The fact that a severance pay program is provided for a legitimate purpose and is a bona fide benefit plan that satisfies 29 U.S.C. § 623(f)(2) does not mean the program complies with the Minnesota Human Rights Act. ·

Even if the majority is correct that the Human Rights Act permits age discrimination when the discrimination is for a legitimate early retirement incentive purpose, the majority has not identified any legitimate early retirement incentive purpose served by the requirement in Leemon's contract that an administrator be at least forty-five years old to receive severance pay. The majority has simply concluded that the severance pay provision in Leemon's contract "is clearly designed to serve a legitimate early retirement incentive purpose as exemplified by the declining benefits formula."

It is true that, under the severance pay provision, the amount of severance pay an employee may receive is reduced after the employee reaches age 61. I agree with the majority that reducing severance pay for employees who are near the normal retirement age serves an early retirement incentive purpose. This differential treatment also is permitted under Minn.Stat. § 363.02, subd. 6 because the designated age is greater than 59 years. Leemon, however, is not challenging this element of the severance pay provision, she is challenging the element that limits severance pay to employees over age 45. Under the majority's own reasoning, there must be a legitimate early retirement incentive purpose for this specific restriction.

The majority has offered no explanation of how the declining benefits formula demonstrates a legitimate basis for limiting severance pay to employees over age 45. Neither have respondents offered an explanation of what legitimate early retirement incentive purpose is served by treating a thirty-six year old administrator who terminates employment differently than a forty-five year old administrator who terminates employment.

I must emphasize that Leemon's contract does not limit severance pay to employees who retire; it only requires that an employee (1) complete ten years of continuous service with the district, (2) be at least forty-five years old, and (3) submit a written resignation. The reason for the resignation is irrelevant. A forty-five year old employee is not required to demonstrate that retirement is the reason for resigning. Under the express terms of the contract, severance pay is not just a benefit for retiring employees.

The only reason why the severance pay provision in Leemon's contract is being treated as an early retirement incentive is that the severance pay provision is included in an article of the contract titled "EARLY RETIREMENT." The district and its bargaining units should not be permitted to transform the authority to pay severance pay into the authority to pay severance pay in a discriminatory manner by simply including the severance pay provision in an article that describes early retirement benefits. The district should at least be required to identify the early retirement incentive purpose served by the age restriction for severance pay. It has not been required to do so.

The differential treatment in the severance pay provision of Leemon's contract is not provided pursuant to Minn.Stat. § 465.72, subd. 1. The age discrimination Leemon suffered does not fall within the exception created by Minn.Stat. § 363.02, subd. 6 and

is, therefore, prohibited by Minn.Stat. § 363.-03, subd. 1(2)(c). I would affirm.