Richard P. DITTMAN, William Czcinski, Terry Lincoln, and Gary Costante, Plaintiffs,

v.

GENERAL MOTORS CORPORATION– DELCO CHASSIS DIVISION, and International Union, United Automobile, Aerospace & Agricultural Implement Workers of America—UAW, Defendants.

Civil No. 3:95CV01743 (PCD).

United States District Court, D. Connecticut.

Sept. 20, 1996.

---

John R. Williams, The Law Offices of John R. Williams, New Haven, CT, for Plaintiffs.

Richard Eric Cohen, Hartford, CT, Michele C. Horan, Burke, Horan & Macri, New York City, for Defendant, General Motors Corporation.

Mary E. Kelly, Livingston, Adler, Pulda & Meiklejohn, Hartford, CT, Jonathan L. Gould, Hartford, CT, for Defendant, International Union, Automobile, Aerospace & Agriculture Implement Workers of America, UAW.

## RULING ON PENDING MOTIONS

DORSEY, Chief Judge.

Plaintiffs allege that defendants discriminated against them on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiffs further allege that defendant UAW breached its duty of fair representation and that both defendants acted fraudulently and intentionally inflicted emotional distress on them. Both defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).[1] for the reasons below, defendants' motions are **granted.**

## I. *BACKGROUND*

Plaintiffs are UAW members between the ages of forty and fifty employed by defendant General Motors–Delco Chassis Division ("GM–DCD") in Bristol, Connecticut. In January 1994, GM–DCD announced the closing of its Bristol facility. Plaintiffs claim that in March 1994 they realized that GM–DCD and UAW had entered into a plant closing agreement ("Agreement"). The Agreement allegedly discriminated against plaintiffs based on age by making generous early retirement plans available to employees who were over age fifty, but not to employees between ages forty and fifty. Moreover, plaintiffs allege that defendants secretly agreed to place Bristol in the "area of hire" of GM–DCD's Tarrytown, NY plant, ninety

miles from Bristol. Plaintiffs argue this forced them to choose between commuting 180 miles round trip each day and quitting without severance benefits which UAW members over fifty received. Plaintiffs filed charges with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO").

## II. *DISCUSSION*

### A. *12(b)(6) STANDARD*

On a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations are presumed to be true, and all factual inferences are drawn in plaintiff's favor. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2nd Cir.1989).

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### B. *REVERSE AGE DISCRIMINATION CLAIM (COUNT I)*

Plaintiffs' reverse age discrimination claim presents an issue of first impression in the second circuit. Plaintiffs maintain that they may invoke the protection of ADEA because they are over forty years of age and are in a protected class that may not be discriminated against based on age. 29 U.S.C. § 631.

With ADEA, Congress intended to protect workers over age forty from age discrimination. 29 U.S.C. § 623(a). But ADEA specifically permits early retirement plans such as the one at issue in the present case. Section 623(*l*)(1)(A) provides that ADEA is not violated solely because "an employee pension

---

**1.** Plaintiffs' complaint also contains references to 42 U.S.C. §§ 1981 and 2000e. However, plaintiffs state that their citations to those sections were inadvertent, and they have urged the court to strike them. Pls.' Mem. in Opp'n to Mot. to

Dismiss at 13. Accordingly, the court will disregard references to these sections of Title VII in its consideration of the present motions, and they will be stricken from the complaint.

benefit plan ... provides for the attainment of a minimum age as a condition of eligibility for normal or early retirement benefits."

Moreover, if employers could not set a minimum age of eligibility for early retirement incentive plans, these plans would effectively be outlawed. Banning such programs clearly was not the intent of ADEA's framers, since such a restriction would force employers to resort to involuntary layoffs to reduce their workforce. S.Rep. No. 623, 101st Cong., 2d Sess. 5 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1557; *see also Karlen v. City Colleges of Chicago,* 837 F.2d 314, 318 (7th Cir.1988), *cert. denied sub nom. Cook County College Teachers' Union v. City Colleges of Chicago,* 486 U.S. 1044, 108 S.Ct. 2038, 100 L.Ed.2d 622 (1988).

Plaintiffs argue that the basis of their discrimination claim is not that they were ineligible for early retirement, but rather that "they did not have the escape hatch provided to workers over fifty." Pls.' Mem. in Opp'n to Mot. to Dismiss at 7. This attempt to recharacterize the complaint in order to avoid the effects of § 623(*l*) is disingenuous. The so-called "escape hatch" and the early retirement plan are one in the same, and plaintiffs' argument is nothing more than semantics.

Several cases also support the proposition that ADEA does not provide a remedy for reverse age discrimination. *See, e.g., Hamilton v. Caterpillar, Inc.,* 966 F.2d 1226 (7th Cir.1992); *Stone v. Travelers Corp.,* 58 F.3d 434 (9th Cir.1995) (commenting that ADEA does not forbid treating older workers more generously than younger workers); *Karlen,* 837 F.2d at 318 (stating that ADEA does not protect the young against the old).

In *Hamilton,* a case virtually identical to the present case, the court held that a special early retirement plan negotiated by UAW and Caterpillar providing benefits to employees over age fifty while excluding those between forty and fifty did not violate ADEA. *Id.* In holding that reverse age discrimination does not exist, the court rejected plaintiffs' analogies to race and sex discrimination. Instead the court analogized age discrimination to disability discrimination: "Congress was concerned that older people were being

cast aside on the basis of inaccurate stereotypes about their abilities. The young, like the non-handicapped, cannot argue that they are similarly victimized." *Id.* at 1228. The court found no evidence in ADEA's legislative history that Congress was concerned with the plight of workers arbitrarily denied opportunities because they are too young. *Id.* This reasoning is persuasive.

■ ADEA specifically allows retirement plans such as the one in question, and ADEA does not bar discrimination against the young in favor of the old. Count I is therefore dismissed.

### C. BREACH OF DUTY OF FAIR REPRESENTATION (COUNT II)

Plaintiffs allege that defendant UAW breached its duty of fair representation under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.,* by making secret deals with GM–DCD. However, UAW maintains that this claim is time-barred because it was filed more than six months after plaintiffs' cause of action accrued. *DelCostello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (holding that unfair representation claims are governed by a six month statute of limitations).

Although plaintiffs acknowledge that their claim is subject to a six month statute of limitations, they assert that it is timely under *DelCostello* since it was filed less than six months after they had exhausted their administrative remedies with the EEOC and the CCHRO.

■ Plaintiffs' interpretation of *DelCostello* is inaccurate. *DelCostello* does imply that the statute of limitations is tolled while plaintiffs pursue grievance or arbitration remedies provided in the collective bargaining agreement, since exhaustion of such remedies is required. *Id.* at 163, 103 S.Ct. at 2289–90; *See e.g., Galindo v. Stoody Co.,* 793 F.2d 1502, 1509–10 (9th Cir.1996) (holding that the statute of limitations is tolled during the pursuit of grievance and arbitration remedies). However, neither *DelCostello* nor any other authorities state that the statute of limitations is tolled during pursuit of federal

or state administrative remedies. In any event, administrative remedies with the EEOC and CCHRO could only cover plaintiffs' age discrimination claims, but not the unfair representation claims. Thus even if, *arguendo,* the agency proceedings toll the statute of limitation for the age discrimination claims, the unfair representation claims are not tolled. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975) (Title VII and § 1981 claims must be preserved independently). Therefore, plaintiffs were obligated to observe the six month statute of limitations for the unfair representation claims.

■ Plaintiffs' final argument is that their unfair representation claims, if otherwise time-barred, should survive under a continuing violation theory. This theory, however, is unavailable since plaintiffs do not allege that UAW breached its duty of fair representation in any way except by refusing to protect plaintiffs from adverse consequences of the plant closing in the Agreement. Union inactivity subsequent to the execution of the agreement which is the basis of the complaint is not a sufficient basis for a continuing violation. *Local Lodge No. 1424 v. N.L.R.B.,* 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); *see also Engelhardt v. Consol. Rail Corp.,* 594 F.Supp. 1157, 1171 (N.D.N.Y. 1984), *aff'd* 756 F.2d 1368 (2nd Cir.1985).

■ The limitation period "begins to run when a plaintiff knows or reasonably should know that the union has breached its duty of fair representation," or when the plaintiff first could have successfully maintained a suit based on that cause of action. *Flanigan v. Int'l Bhd. of Teamsters,* 942 F.2d 824, 827 (2nd Cir.1991). Since there is no continuing violation and plaintiffs learned in March 1994 that UAW had allegedly made "secret agreements" with GM–DCD, the statute of limitations began to run at that time. (Compl. ¶¶ 11–14). However, plaintiffs did not file the present suit until August 21, 1995, seventeen months after they had knowledge of the alleged secret agreements. (Compl. ¶¶ 7–11, 13).

Since plaintiffs filed their action beyond the six month statutory period, Claim II is **dismissed.**

### D. *LMRA Preemption Of State Tort Claims (Counts III & IV)*

■ The Labor Management Relations Act ("LMRA") preempts plaintiff's state law tort claims. LMRA § 301 gives federal courts subject matter jurisdiction over suits alleging violations of collective bargaining agreements:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. In enacting § 301, Congress intended that uniform federal labor law would prevail over inconsistent local rules. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985). The Supreme Court has held that the federal interest in uniform interpretation of collective bargaining agreements may preempt certain state-law tort actions. *Lueck,* 471 U.S. at 210–11, 105 S.Ct. at 1910–11. When preempted by § 301, state claims must either be treated as a § 301 claim, or be dismissed. *Id.* at 220, 105 S.Ct. at 1915–16. If resolution of a state law claim depends upon analysis of the terms of a collective bargaining agreement, then § 301 preempts the claim. *Id.* However, when a state law claim can be resolved without interpreting the collective agreement, the claim is independent of it and not preempted by § 301. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 410, 108 S.Ct. 1877, 1883, 100 L.Ed.2d 410 (1988).

■ Plaintiffs maintain that defendants committed fraud and intentionally inflicted emotional distress upon them by making secret deals and by withholding relevant information regarding the Agreement. But in *Dougherty v. Am. Tel. & Tel. Co.,* 902 F.2d 201 (2nd Cir.1990), a factually similar case,

plaintiffs' fraud claims were held "inextricably intertwined" with a collective agreement, The fraud claims were thus preempted by § 301 and dismissed. There, as here, a group of employees claimed that their employer had an obligation to provide accurate information to them about the terms of a plant closing agreement. However, the court held that the substance of plaintiffs' fraud claims could not be determined without interpreting the collective bargaining agreement that governed the employment relationship. *Id.* at 204.

Similarly, in the present case, defendants modified the collective bargaining agreement to include provisions for severance packages and worker reassignment policies in anticipation of the Bristol plant closing. These modifications allegedly affected the employment rights and options of UAW members working at the Bristol plant. Thus, plaintiffs' claims arise out of defendants' actions in modifying the collective bargaining agreement and concern the substance of the negotiations and agreements. Since plaintiffs' claims raise a question regarding defendants' obligations to provide accurate information about plaintiffs' options after the plant closing, they are "inextricably intertwined" with consideration of various collective bargaining agreements and preempted by § 301.

For the same reasons, plaintiffs' intentional infliction of emotional distress claims are preempted by § 301. Plaintiffs' emotional distress claims require interpretation of plaintiffs' rights as employees under the Agreement and its predecessor agreements. The claims depend on whether defendants carried out their negotiations in a manner permitted by the collective agreements. The emotional distress claims are "inextricably intertwined" with the § 301 claims and therefore cannot be maintained independently. *See e.g.; Adkins v. General Motors Corp.,* 946 F.2d 1201 (6th Cir.1991); *Ellis v. Lloyd,* 838 F.Supp. 704, 708 (D.Conn. 1993); *Anderson v. Coca Cola Bottling Co.,* 772 F.Supp. 77, 82 (D.Conn.1991).

Relying on *Vorvis v. Southern New England Tel. Co.,* 821 F.Supp. 851 (D.Conn.1993), plaintiffs maintain that their state law claims are not preempted by § 301, since they are independent of the various collective bargaining agreements, or, at most, "tangentially" involve their provisions. Plaintiffs' reliance on this case, however, is inapposite. Although *Vorvis* held that a female employee's emotional distress claims arising from harassment by a supervisor were not preempted, the court did not, as plaintiffs suggest, offer a broad sweeping rule that § 301 does not preempt emotional distress claims in the workplace.

Furthermore, unlike *Vorvis,* plaintiffs do not allege that they were harmed by an act which did not arise from the negotiation of the Agreement or from the agreement itself. Undeniably, the gravamen of plaintiffs' complaint is that defendants withheld relevant information from them about the Agreement and its impact upon workers between ages forty and fifty. Thus, their claims directly implicate the quality of the union's representation and the fairness of GM–DCD's labor practices, "issues central to the concerns of federal labor law." *Adkins,* 946 F.2d at 1213.

Plaintiffs' reliance on *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) and its progeny for the proposition that their state causes of action should not be preempted since they touch upon deeply rooted local interests is misplaced. The Supreme Court has "refused to apply the pre-emption doctrine to activity that otherwise would fall within the scope of *Garmon* if that activity 'was a merely peripheral concern of the Labor Management Relations Act ... [or] touched interests so deeply rooted in local feeling and responsibility ...'" *Farmer v. United Bhd. of Carpenters & Joiners of Am.,* 430 U.S. 290, 296, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977) (quoting *Garmon*). But *Farmer* specifically cautioned against an over broad reading of these cases, reemphasizing the general applicability of the preemption rule. *Id.* at 305, 97 S.Ct. at 1066. Where, as here, a state tort is a function of the "abusive manner in which the [unfair labor practice] is accomplished," state court jurisdiction would present a realistic threat of interference with the federal regulatory scheme. *Id.* Thus, the present case does not fall into the *Garmon* exception.

Plaintiffs' state law tort claims are preempted by § 301. Claims I and II are therefore **dismissed.**

### III. *CONCLUSION*

For the foregoing reasons, defendants' motions to dismiss (docs. 11 & 13) are **granted** as to all counts of plaintiffs' complaint. The clerk shall enter judgment and close the file.

SO ORDERED.