Muriel AUERBACH, Antoinette Brink, Elizabeth Clines, Faith Dessauer, Muriel Gruff, Irwin Halpern, Ronald Hoff, Paul H. Johnson, Pasquale J. Marra. Nancy Monje, Gloria Schnur, Marie Tanchuck, Patricia S. Williams, and Jennifer Zimmer, Plaintiffs–Appellants,

v.

THE BOARD OF EDUCATION OF THE HARBORFIELDS CENTRAL SCHOOL DISTRICT OF GREENLAWN, Greenlawn, New York, United Teachers of

Harborfields, and William Thomsen, in his capacity as President of the United Teachers of Harborfields, Defendants–Appellees.

No. 1540, Docket 96–9197.

United States Court of Appeals, Second Circuit

Argued May 14, 1997.

Decided Jan. 12, 1998.

Robert M. Rosen, Hempstead, New York (David S. Feather, Douglas D. Scherer, Rosen, Leff, Hempstead, New York, of counsel), for Plaintiffs–Appellants.

Mona N. Glanzer, Mineola, New York (Mark N. Reinharz, Rains & Pogrebin, P.C., Mineola, New York, of counsel), for Defendant–Appellee Board of Education of the

Harborfields Central School District of Greenlawn.

Merril Schapiro Biscone, Uniondale, New York (Evan H. Krinick, Rivkin, Radler & Kremer, Uniondale, New York, of counsel), for Defendants–Appellees United Teachers of Harborfields and William Thomsen.

Jay Worona, General Counsel, New York State School Boards Association, Albany, New York, filed a brief Amicus Curiae for The New York State School Boards Association, Inc.

Cathy Ventrell–Monsees, Melvin Radowitz, American Association of Retired Persons, Washington, DC; Douglas H. Hedin, National Employment Lawyers Association, Minneapolis, Minnesota, filed a brief Amici Curiae for the American Association of Retired Persons and The National Employment Lawyers Association.

Before WINTER, Chief Judge, CARDAMONE, and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge.

We are called upon in this case to determine the validity of an early retirement incentive plan for teachers employed at a Long Island, New York, school district. The critical question is whether the plan discriminates against older teachers in a manner that violates federal law prohibiting discrimination in employment on account of age. Age discrimination law has not been tried and found wanting, but rather has been tried and found difficult to construe as Congress wants. Because the federal courts have not successfully construed this statute, they must, in the ordinary course of having not at first succeeded, try, try again. That is what this opinion proposes to do.

Plaintiffs are 14 present and former public school teachers employed by defendant Board of Education of the Harborfields Central School District of Greenlawn, New York (the School District). All plaintiffs were or are members of defendant United Teachers of Harborfields (the Union), affiliated with defendant New York State United Teachers. They appeal from a judgment of the United States District Court for the Eastern District

of New York (Platt, J.), dismissing their claims under the Age Discrimination in Employment Act of 1967 (the ADEA) for lack of ripeness as to six plaintiffs and dismissing as to the remaining plaintiffs for failure to state a claim upon which relief can be granted.

## BACKGROUND

### A. *Teacher's Retirement Incentive Plan*

The defendant Union and the defendant School District entered into a collective bargaining agreement effective July 1, 1993 through June 30, 1996. It contains a provision entitled "Retirement Incentive Plan/Payment for Unused Sick Leave," which provides:

A teacher retiring under this plan will receive the following benefits:

Terminal payment based upon accumulated sick leave will be determined by granting one (1) day's credit for each two (2) days of accumulated sick leave, up to a maximum of 150 credited days. In addition eligible teachers will receive a retirement incentive in the amount of Twelve Thousand Five Hundred ($12,500.00) dollars.

Eligibility requirements for this plan include the following:

1. A teacher must retire at the conclusion of the school year (July 1–September 1), he/she first reaches the age of fifty five (55) years and completes a total of at least twenty (20) years of credited service under the New York State Teachers' Retirement System [the TRS], or at the conclusion of the school year in which the teacher, who is age fifty-five (55) years or more, has first completed twenty (20) years of credited service under the New York State Teachers' Retirement System.

2. A teacher must have completed ten (10) consecutive full years of service in the Harborfields Central School District.

3. A teacher must submit to the District no later than January 1, of the final full year of service, a letter of resignation for retirement purposes. This notice provision may be waived for employees retiring for medical reasons, or for any other

reason(s), upon the recommendation of the Superintendent of Schools and approval by the Board of Education.

Plaintiffs allege this incentive retirement plan violates the ADEA.

Under the plan's terms, a participating teacher must actually retire at the conclusion of the school year in which he or she first becomes eligible to retire (the optimum year) in order to secure the $12,500 fixed sum payment and the accumulated sick leave payment (together, the retirement incentive benefits). Teachers older than 55, but who have not yet fulfilled the service requirements, must retire in the year they complete the service requirements, regardless of their actual age, to receive the retirement incentive benefits. Conversely, a teacher who has already completed the service requirements by the time he or she reaches age 55 must retire at the conclusion of the school year during which he or she becomes 55 in order to obtain these benefits. Otherwise, the benefits are forever lost.

### B. *Prior Proceedings*

Plaintiffs filed suit in the Eastern District of New York on March 3, 1995 alleging that the retirement plan's eligibility requirements violate the ADEA. At the inception of this litigation, six of the plaintiffs were active teachers in the School District and eight were retired. Each plaintiff had fulfilled the retirement plan's service requirements and initially had the opportunity to participate in the plan. Having decided to wait to retire until sometime after the year in which the retirement incentive benefits first became available to them, each plaintiff is now ineligible to participate in the plan. As a result, they argue that the age 55 eligibility requirement constitutes age-based discrimination because it deprives them of retirement incentive benefits available to younger teachers under the age of 55, who may still retire at the optimum age to receive those benefits.

By a memorandum and order dated August 26, 1996 the district court: (1) dismissed under Fed.R.Civ.P. 12(b)(1) the claims brought on behalf of the six plaintiffs who had not yet retired; and (2) dismissed under Rule 12(b)(6) the remainder of the claims for failure to state a *prima facie* cause of action for discrimination. With regard to the second ground for dismissal, the district court specifically found that the retirement incentive benefits are awarded on the basis of seniority, rather than age, and that these eight plaintiffs had accordingly failed to make out a cause of action cognizable under the ADEA. Continuing its analysis, the court stated that, even if the eight plaintiffs had met their initial burden of stating a claim, the retirement plan is valid under the ADEA as a matter of law.

We affirm the order dismissing the six unretired plaintiffs' claims as not ripe for adjudication. Although we also agree with the dismissal of the remaining eight teachers' causes of action, we take a somewhat different path to reach that result.

### DISCUSSION

#### I Ripeness

As noted, six of the 14 plaintiffs were employed by the Board when this suit began. All six were then over 55 years old and had fulfilled the plan's service requirements. After the commencement of the action but before dismissal of the suit, four of the six teachers retired without receiving any of the retirement incentive benefits, leaving only two plaintiffs employed by the defendant School District. The district court nonetheless dismissed the claims of all six plaintiffs pursuant to Rule 12(b)(1), holding that their claims were not ripe for adjudication.

Federal subject matter jurisdiction extends to controversies arising under the Constitution, the laws of the United States and treaties into which the United States has entered. *See* U.S. Const. art. III, § 2, cl. 1. Federal courts may adjudicate only those "real and substantial controvers[ies] admitting of specific relief ... as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). When the events alleged in a plain-

tiff's cause of action have not yet occurred, a federal court is precluded from exercising subject matter jurisdiction because a real case or controversy does not exist for purposes of Article III. *See Cargill, Inc. v. Charles Kowsky Resources, Inc.*, 949 F.2d 51, 56 (2d Cir.1991).

■ The six unretired plaintiffs' claims were properly dismissed under the ripeness doctrine. We pause to address the claims of four of these six teachers, who retired between the time of the commencement and dismissal of the action. When the district court ruled, it properly treated these four plaintiffs as unretired because their amended complaint asserted that they were still employed by the Board. Nothing in the record indicates there was any evidence before the district court that these four plaintiffs had retired in the interim. Hence, this change in those plaintiffs' circumstance cannot now be considered by us.

■ The injury alleged by the six teachers employed by the school district at the time of the commencement of this litigation was entirely speculative. When this action was initiated, these teachers had not retired and consequently, had not been denied any incentive benefits paid to their younger colleagues under the retirement plan. That is to say, they had suffered no injury in fact. These teachers maintained that *if* they retired while the current labor agreement was in effect, they would not receive the plan's benefits. This claim is contingent upon retirement. Nevertheless, the factual event forming the basis of the claim, i.e., their retirement, had not occurred at the commencement of the action. *See Cargill*, 949 F.2d at 56.

■ The collective bargaining agreement containing the retirement incentive plan was effective only through June 30, 1996, and a new agreement was being negotiated during the course of this appeal. As a result, any unretired teacher may be subject to entirely different contractual terms at the time he or she actually retires. Because nothing in the record sheds any light on a possible new agreement's terms, we obviously cannot rule on them. The ripeness doctrine is intended to prevent adjudication of issues that may never arise. *See Motor Vehicle Mfrs. Assoc. of the United States, Inc. v. New York State Dep't of Envtl. Conservation*, 79 F.3d 1298, 1305 (2d Cir.1996). Thus, the dismissal of these six plaintiffs' claims on the grounds of ripeness must be upheld. We pause to note in passing that the four teachers who retired during the district court proceedings may overcome their ripeness problem by filing a new cause of action alleging the fact of their retirement. However, their claims would be collaterally estopped by the analysis set forth later in this opinion.

II: Failure to State a *Prima Facie* Case of Discrimination

Before we examine whether the retirement plan is valid under the ADEA, it must first be determined whether plaintiffs have established a *prima facie* case of age discrimination. Having disposed of six plaintiffs' claims on ripeness grounds, the trial court dismissed the remaining eight claims, pursuant to Rule 12(b)(6), on the ground that the complaint failed to state a claim upon which relief could be granted. Judge Platt reasoned that the retirement plan selects which teachers benefit, not on account of age, but rather on account of seniority. Since the motivation behind the retirement plan is not age, the district court then ruled that the plaintiffs failed to make out a *prima facie* case of age discrimination under the ADEA.

■ At this point, our path diverges from that of the trial court. To establish a claim for disparate treatment under the ADEA, plaintiffs bear the initial burden of demonstrating that the actual motivation for the employer's decision was the employee's age. *Cf. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993) ("[A] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome."). No discrimination under the ADEA occurs when some factor other than age motivates the employer's action or decision. *See id.* While we recognize the validity of this notion, we have repeatedly held that the burden on the plaintiff to make out a *prima facie* case of age discrimination is *de*

*minimis. Cf. Criley v. Delta Air Lines, Inc.,* 119 F.3d 102, 104 (2d Cir.) (claim for discriminatory hiring under ADEA), *cert. denied,* —— U.S. ——, 118 S.Ct. 626, 139 L.Ed.2d 607 (1997); *Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997) (same); *Woroski v. Nashua Corp.,* 31 F.3d 105, 109 (2d Cir. 1994) (claim for unlawful discharge under the ADEA).

■ Here the eight remaining plaintiffs fulfilled the retirement plan's job service requirements and reached the requisite age of 55 or older. But because they did not retire in the precise year when they first fulfilled the requirements of the plan, they are forever precluded from receiving the retirement incentive benefits. Thus, age is a trigger for the denial of their employee benefits. Meanwhile, teachers under the age of 55 who have fulfilled the plan's job service requirements have the future option to receive the retirement incentive benefits.

Consequently, we think it plain that age, not years of service, is the factor behind the disparate treatment of teachers. In light of the minimal burden to be met, plaintiffs established a *prima facie* case of age discrimination under the ADEA and the district court's contrary conclusion is error. Nonetheless, we agree with the district court's ultimate conclusion that the retirement plan is a valid early retirement incentive plan under the ADEA as a matter of law. To put our reasoning in proper perspective, a review of ADEA legislative history is helpful.

### III  Legislative History

#### A.  *ADEA*

Congress enacted the ADEA in 1967 "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b) (1994). To accomplish these goals, § 4(a)(1) of the ADEA broadly forbids arbitrary discrimination by public and private employers against their employees on account of age:

[It shall be unlawful for an employer] to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

29 U.S.C. § 623(a)(1) (1994).

Section 4(f)(2) of the Act, 29 U.S.C. § 623(f)(2), addresses the issue of employee benefit plans, including retirement incentive plans. Realizing that the costs of providing certain employee benefits increases with age, Congress decided that employers need not provide "exactly the same benefits" to older employees as they do for younger ones, when to do so would result in excessive benefit costs that would discourage employers from hiring older workers in the first place. *See* S.Rep. No. 90–723, at 14 (1967) (individual views of Sen. Javits); 113 Cong.Rec. 34746 (1967) (remarks of Rep. Daniels); 113 Cong. Rec. 31254–55 (1967) (remarks of Sen. Javits).

Thus, § 4(f)(2), as originally enacted, allowed an employer to offer disparate employee benefit plans so long as the plan was not a "subterfuge to evade the purposes" of ADEA. Pub.L. No. 90–202, § 4(f)(2), 81 Stat. 602 (1967) (prior to 1978 amendment). The aim of § 4(f)(2) was to encourage the employment of older workers by permitting employers to make distinctions based on age with respect to employee benefit plans, if providing equal benefits to older workers would be more costly to the employer.

In 1977 the Supreme Court first construed the meaning of this "subterfuge" provision in *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). The Court ignored Congress' specific and limited purpose for enacting § 4(f)(2) and held instead that the provision was intended to protect from invalidation almost all retirement plans. *See id.* at 199–201, 98 S.Ct. at 448–49. For example, the Court concluded that mandatory retirement pursuant to an employee benefit plan pre-dating the ADEA was lawful under § 4(f)(2) because it could not constitute a "subterfuge" to evade the purposes of the ADEA. *See id.* at 203, 98 S.Ct. at 450.

## B. *Amendment of ADEA*

The next year Congress amended the ADEA to overrule *McMann*. It added a final clause to § 4(f)(2) requiring that an employee benefit plan be voluntary in order to be valid under the ADEA. *See* Pub.L. No. 95–256, § 2(a), 92 Stat. 189, 189 (1978) (prior to 1990 amendment). In the process, Congress expressly disapproved of the Supreme Court's reasoning as well as its holding in *McMann*. *See* H.R.Conf.Rep. No. 95–950, at 8, 1978 U.S.C.C.A.N. 504, 529, 530 (1978); *see also* 124 Cong.Rec. 8218 (1978) (remarks of Sen. Javits); 124 Cong.Rec. 7881 (1978) (remarks of Rep. Hawkins). The Conference Report to the 1978 Amendments unequivocally concluded that the "subterfuge" clause was never intended to provide a blanket exception for all employee benefit plans that antedated the ADEA. *See* H.R.Conf.Rep. No. 95–950, at 8.

Legislators took pains to reiterate that the initial purpose of § 4(f)(2) was to account for the increased costs of providing particular benefits to older workers, and that the section authorized benefit reductions necessitated only by age-related cost considerations. *See* 124 Cong.Rec. 8218–19 (1978) (remarks of Sen. Javits); 123 Cong.Rec. 34295 (1977) (remarks of Sen. Williams). Accordingly, for a plan to comply with the ADEA, the employer had to show that it either provided the same benefits to older employees or incurred the same costs on behalf of older employees. Under this "equal benefit or equal cost" principle, so long as the employer could provide a cost-based justification for the disparate benefits, the plan would not be a "subterfuge." *See* 123 Cong.Rec. 34295 (1977).

## C. *The Supreme Court's Decision in* Betts

In 1989, the Supreme Court reconsidered the meaning and scope of § 4(f)(2) in *Ohio Pub. Employees Retirement Sys. v. Betts,* 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). It there upheld a plan denying disability retirement benefits to employees over the age of 60. According to the Court, § 4(f)(2) provided a broad exemption for employee benefit plans under the ADEA, and therefore the general prohibitions regarding the unlawfulness of discrimination against older employees found in § 4(a)(1) did not apply to employee benefit plans. *See id.* at 177, 109 S.Ct. at 2866 ("Congress left the employee benefit battle for another day, and legislated only as to hiring and firing, wages and salaries, and other non-fringe-benefit terms and conditions of employment.").

Moreover, despite the clear expression of Congress' purpose, the Court rejected the "equal benefit or equal cost" principle by determining that an employer need not demonstrate a legitimate cost justification for age-based reductions in benefits under a retirement incentive plan. *See id.* at 170–75, 109 S.Ct. at 2862–66. Instead, the Court required an employee to prove that the challenged plan "intended to serve the purpose of discriminating in some non-fringe-benefit aspect of the employment relation," such as hiring, firing and wages, in order to establish an ADEA violation. *Id.* at 181, 109 S.Ct. at 2868. This interpretation would effectively validate virtually all age-based restrictions in retirement incentive plans—among other employee benefit plans—absent the requisite showing by an employee that the employer subjectively intended to discriminate. *See id.*

The Supreme Court, in dicta, additionally reaffirmed its holding in *McMann* that an employee plan antedating the ADEA cannot constitute a "subterfuge" to evade the purposes of the Act. *See id.* at 168, 109 S.Ct. at 2862. In the process, it expressly disregarded earlier Congressional reports and floor statements to the contrary, *see id.* at 167–68, 109 S.Ct. at 2861–62, noting that the 1978 amendment to the actual text of the ADEA did not change the controlling, general language of § 4(f)(2). *See id.* at 168, 109 S.Ct. at 2861–62. Specifically, the amendment to § 4(f)(2) did not disturb the Court's prior definition of "subterfuge." *See id.* The Court reasoned, accordingly, that the statutory addition to § 4(f)(2) changed only the specific outcome in *McMann* by forbidding mandatory retirement based on age. *See id.*

## D. *Enactment of Older Workers' Benefit Protection Act*

Congress strongly disagreed with the Supreme Court's new interpretation of

§ 4(f)(2), *see* S.Rep. No. 101–263, at 16–17 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1521–22, and quickly responded by amending § 4(f)(2) in the course of passing the Older Workers' Benefit Protection Act of 1990 (Older Workers' Protection Act or Act). That Act changed § 4(f)(2) to its modern form:

It shall not be unlawful for an employer . . .

(B) to observe the terms of a bona fide employee benefit plan—

(i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker . . .; *or*

(ii) *that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter.*

29 U.S.C. § 623(f)(2) (1994) (emphasis added). This Act unmistakably overturns the reasoning and holding of the Supreme Court in *Betts* and revives the ADEA's original purpose to eliminate arbitrary age discrimination in all facets of the workplace, including employee benefits. *See* S.Rep. No. 101–263, at 16–17 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1521–22.

To achieve that purpose, the Older Workers' Protection Act eliminates from § 4(f)(2) the broadly constructed employee benefit plans exemption that was subject to the troublesome and controversial "subterfuge" provision. The word "subterfuge" does not appear in the new section. Instead, the Act subdivides employee benefit plans into two categories: employee benefits and early retirement incentive plans. Section 4(f)(2)(B)(i) governs employee benefits and expressly adopts the "equal benefit or equal cost" principle, once and for all, ending judicial speculation as to the exact meaning of the earlier "subterfuge" provision. The only justification for an age-based reduction in employee benefits is the increased cost in providing those benefits to older workers.

■ Section 4(f)(2)(B)(ii) controls early retirement incentive plans and, significantly, contains no such increased cost language. In other words, the "equal benefit or equal cost" rule has no application in the retirement incentive plan context. Thus, § 4(f)(2)(B)(ii) does not require that an employer provide identical early retirement incentives for employees of different ages or incur the same costs for all employees. Rather, the early retirement incentive plan need only be voluntary and consistent with the ADEA's relevant purpose(s). The legislature has identified one overriding relevant purpose—the protection of employees from arbitrary age discrimination. *See* 29 U.S.C. § 621(b); *see also* 136 Cong.Rec. 27061 (1990); 136 Cong. Rec. 25352–53 (1990).

## IV Resolution of the Merits

■ With the benefit of this legislative history, we turn to the merits. At the outset, we quickly dispose of plaintiffs' argument that the sick leave benefit is an "employee benefit" subject to the "equal benefit or equal cost" rule of § 4(f)(2)(B)(i). Upon close examination of the plan, we have determined that the sick leave benefit is, in fact, a retirement incentive under the plan because the sick leave benefit is not paid out unless and until a teacher retires under the plan. For that reason, we will apply § 4(f)(2)(B)(ii) to the entire plan at issue. From this history, it is apparent that not all early retirement incentive plans will be lawful. Under the Older Workers' Protection Act, once the plaintiff has set forth a *prima facie* case of age discrimination, the defendant bears the burden of establishing that the early retirement incentive plan is voluntary and comports with the purposes of the ADEA. 29 U.S.C. § 623(f)(2) ("An employer, employment agency, or labor organization . . . shall have the burden of proving that such actions are lawful in any civil enforcement proceeding brought under this chapter.").

■ Whether such a plan "furthers the purposes of the Act" is ultimately an inquiry to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances. *See* S.Rep. No. 101–263, at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533. A court examining the validity of these plans should consider whether the plan

(1) is truly voluntary, (2) is made available for a reasonable period of time, and (3) does not arbitrarily discriminate on the basis of age. *See id.* For the following reasons, we conclude that the subject retirement plan set forth in the collective bargaining agreement entered into by the defendant Union and the defendant School District furthers the purposes of the ADEA.

■ 1. *Voluntariness.* To determine whether a retirement plan is voluntary, a court must consider whether, under the circumstances, a reasonable person would have concluded that there was no choice but to accept the offer. *See Paolillo v. Dresser Indus., Inc.,* 821 F.2d 81, 84 (2d Cir.1987) (giving employees only one weekend to accept early retirement raises question whether acceptance of plan is voluntary). The present early retirement plan provides older teachers with an uncoerced, free choice. No teacher is required to accept the plan. Moreover, the record shows that neither fraud, threats of imminent layoffs, intimidation nor subtle coercion are present. Instead, teachers receive complete and accurate information regarding the benefits available to them under the plan. Those who elect not to retire in the optimum year continue to teach and receive all of the benefits of the collective bargaining agreement, including annual salary increases. Hence, the plan meets Congress' test of voluntariness.

2. *Reasonable Period of Time.* Employees must be given a reasonable amount of time to consider their options and make an informed choice. We conclude that the plan provides eligible teachers with sufficient time to make their decision. Under the plan, qualifying teachers must submit to the School District a letter of resignation no later than January 1 of their final full year of service. This requirement gives teachers approximately four months from the time their optimum school year begins (i.e., in September) to reflect and weigh their options. Under these circumstances, the district court correctly held that the retirement plan provides a reasonable amount of time for teachers to consider their options.

3. *No Arbitrary Discrimination.* The final question we must address is whether the plan arbitrarily discriminates on the basis of age. Despite curtailing the Supreme Court's prior broad approval of employee benefit plans through passage of the Older Workers' Protection Act, Congress envisioned the proliferation of early retirement incentive plans akin to the plan at issue. Both Houses expressly endorsed plans containing a time-related window during which employees, upon attaining a specified age, are offered for a limited period of time a special incentive to retire. *See* 136 Cong.Rec. 27061 (1990) (House record); 135 Cong.Rec. 25353 (1990) (Senate record); *see also* S.Rep. No. 101–263, at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533–34. Those special incentives may include both flat dollar amounts and service-based benefits (i.e., accumulated sick pay). *See* S.Rep. No. 101–263, at 28 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533. Holding that such plans were consistent with the stated purpose of the ADEA, a Senate Report acknowledged that they "may help employers and workers meet problems arising from the impact of age on employment...." *Id.*

The retirement plan in the case at hand is precisely the sort of early retirement incentive plan that Congress aimed to preserve as lawful when it passed the Older Workers' Protection Act. 136 Cong.Rec. 27061 (1990) (House record) ("early retirement incentives that provide a flat dollar amount ... [to] employees who have attained age 55 and who retire during a specified window period ... would be lawful"); 136 Cong.Rec. 25353 (1990) (Senate record) (same). The plan grants *every* teacher the opportunity to receive a $12,500 cash payment and an accumulated sick leave payment once he or she reaches the age of 55 and has served the requisite number of years. Teachers who decline to participate in the plan and receive its benefits continue to work as valued employees in the School District without any corresponding loss of benefits or job status.

The Harborfields Plan is easily distinguished from the plan considered by the Seventh Circuit in *Karlen v. City Colleges of Chicago,* 837 F.2d 314 (7th Cir.1988), on

which plaintiffs rely. The plaintiffs in *Karlen* attacked a retirement plan that offered retirees a lump sum payment based upon a variable percentage of their accumulated sick pay, depending upon their age at the time of retirement. This percentage rose from 50 percent at age 55 to 80 percent at age 64, but fell to 45 percent after age 64. *See id.* at 316.

The *Karlen* plan arbitrarily discriminated on the basis of age among those within the group eligible for early retirement benefits. *See Cipriano v. Board of Educ. of North Tonawanda,* 700 F.Supp. 1199, 1210–11 (W.D.N.Y.1988), *vacated on other grounds,* 772 F.Supp. 1346 (W.D.N.Y.1991), *aff'd,* 968 F.2d 1502 (2d Cir.1992). The incentives gradually increased between ages 55 and 64, but dropped off precipitously for those participants who retired after age 64. As a result, some plan participants received greater incentives than others solely because they retired at a more optimal age under the plan. The employer offered no reason other than age for this downward sliding scale of incentive benefits.

An early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment. *See* S.Rep. No. 101–263, at 27 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533; *see also Karlen,* 837 F.2d at 320 ("To withhold benefits from older persons in order to induce them to retire seems precisely the form of discrimination at which the Age Discrimination in Employment Act is aimed."). The terms of a plan cannot discriminate among participants on the basis of age.

In contrast, the present plan does not provide for an age-based phase out of a lump sum incentive payment. The plan pays out two lump sum amounts—one of which is dependent on the employee's sick leave record—to every teacher who retires during the incentive window. By offering the same incentives (subject to variations in accumulated sick days) to all plan participants who reach the age of 55, it treats those participants equally, regardless of the actual age at which they retire. It is true that some older retirees who do not participate in the plan will not receive its benefits. However, their loss of plan benefits is due to their election to refrain from exercising their early retirement option during the relevant window of opportunity (which was the same length of time for all eligible employees), and not because they participated in the plan, yet retired at a later age. Consequently, the subject retirement incentive plan does not arbitrarily discriminate on the basis of age among early retirees who choose this option because it does not diminish benefits as the age of its participants increases. It therefore satisfies the overriding purpose of the ADEA that a plan not discriminate on account of an employee's age.

## CONCLUSION

For the reasons stated, the decision of the district court is affirmed.